# Richmond.

## R. C. CANADA, ET AL., V. C. H. BEASLEY & BROS., INC.

March 16, 1922.

Absent, West, J.

1. HOMESTEAD—*Bankruptcy—Right of General Creditor—Case at Bar.*—A homestead exemption claimed and duly perfected before any of the proceedings involved in the instant case had been attacked or challenged cut off a general creditor's right to subject the real estate selected as a homestead.

2. HUSBAND AND WIFE—*Transactions Between—Gift.*—A husband, a merchant, conveyed to his wife a stock of goods which she immediately resold to him. There was no valuable consideration for either transfer. After these transfers the husband became indebted to complainant for purchases of merchandise in the ordinary course of business. These purchases from complainant by the husband were made in his own name and solely on his own credit. The husband at the time of the sale to his wife and resale and thereafter continued in actual possession of the stock of goods.

    *Held:* That neither section 2414 nor section 2460-a, Code of 1904, in any way affected the title which the husband took under the contract of resale, and that the sale and resale between husband and wife did not constitute the wife a debtor as to purchases from complainant made by her husband.

3. ELECTION—*Estoppel—Pleading—Assuming Inconsistent Positions in the Same or Successive Suits.—Case at Bar.*—Where a creditor in bankruptcy proceedings, with full knowledge of the facts, elected to treat certain real and personal property as belonging to a husband, and to assert its debt against him alone, the creditor cannot thereafter in another suit assume a different attitude, and claim that the property belonged to the wife, and that the debt was due from her.

4. ELECTION—*Estoppel—Pleading—Assuming Inconsistent Positions in the Same or Successive Suits.*—A party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact, or state of facts, which are inconsistent with each other or mutually contradictory.

5. BANKRUPTCY AND INSOLVENCY—*Exemptions—Homestead—Jurisdiction to Determine—Res Judicata.*—A court of bankruptcy has jurisdiction to determine the claim of a bankrupt to his exemption, and when it is determined then it is settled once for all and cannot be questioned in a collateral proceeding.
6. BANKRUPTCY AND INSOLVENCY—*Homestead Exemption—Specific Liens.*—The jurisdiction of bankruptcy courts does not extend further than the determination and allowance of the exemption. It has nothing to do with the enforcement of specific liens or other claims against the property paramount to the homestead.
7. BANKRUPTCY AND INSOLVENCY—*Fraudulent Conveyances—Homestead Exemption—Res Judicata.*—In the instant case the transfers ₂which were challenged as fraudulent had never been in any way questioned when the homestead was claimed and set apart in the manner allowed by law, and the exemption was thereafter duly allowed, without challenge by the complainant, in the bankruptcy proceedings.

*Held:* That complainant, if it ever had any right to assail the homestead, lost that right by its course in the bankruptcy court.

Appeal from a decree of the Circuit Court of Halifax county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*James H. Guthrie,* for the appellant.

*Frank L. Thomasson* and *Jas. S. Easley,* for the appellees.

KELLY, P., delivered the opinion of the court.

In essentials, the case is this: On September 12, 1917, R. C. Canada, a merchant, conveyed to his wife, Annie C. Canada, for a consideration expressed in the deed as "$10 cash in hand and the further consideration of love and affection," a certain lot on which was situated his storehouse and dwelling attached; and by the same conveyance he transferred to his wife his stock of goods and fixtures in

the storehouse. This deed was duly recorded, either on its date or within a few days thereafter. There is a statement in the brief for appellee, and a suggestion in a question in one of the depositions in the case to the effect that the date of recordation was September 22nd, but according to the copy of the deed in the transcript before us, it was recorded on the 12th day of September, the day of its execution. The deed contained a condition subsequent, upon the happening of which all the property thereby conveyed would revert to R. C. Canada. Simultaneously with, or immediately after, the execution of the deed, by written contract of that date, Annie C. Canada "contracts and agrees to sell to the said R. C. Canada all of the merchandise in said storehouse which was formerly owned by the said R. C. Canada for the sum of $2,000, which sum is evidenced by a certain note of even date herewith drawn by the said R. C. Canada and payable to the said Annie Canada one year after date, with interest after maturity." There was, in fact, no valuable consideration either for the conveyance of the lot and buildings and stock of goods, or for the resale of the goods; and there was no actual transfer of the possession of the goods from Canada to his wife and, in turn, from her to him. He was in possession at the time of the execution of the above-mentioned deed and contract, and so remained, continuing his business as a merchant until February 20, 1918. Subsequent to September 12, 1917, and before the end of that calendar year, he purchased of C. H. Beasley and Bros., Inc. (appellee), various bills of merchandise, amounting in the aggregate to $623.48, and during the same period purchased other like bills from other parties, the whole of which, including the Beasley Bros. bill, amounted to $4,523.18. All of these purchases were made on credit extended solely to him in the regular course of trade, were evidenced by open accounts, and remained wholly unpaid when the petition in bankruptcy hereinafter referred to was filed.

On January 26, 1918, Annie C. Canada made a deed to R. C. Canada for an expressed consideration of "five dollars and other valuable considerations," whereby she (1) conveyed to him the lot and buildings aforesaid, and (2) recited the contemporaneous interchange between them of the title to the stock of goods as above set out, and then proceeded to "grant, release, and convey" to him "all of the stock of general merchandise and fixtures now on hand and contained in the storehouse aforesaid." This deed was duly recorded on January 28, 1918. On the 20th day of February, 1918, by a writing duly executed, R. C. Canada selected and set apart as his homestead exemption the aforesaid lot and buildings, valued in the homestead deed at $1,800.00, and certain articles of personal property valued therein at $184.75. This claim of homestead was recorded on February 21, 1918.

On the last-named date, February 21, 1918, R. C. Canada was adjudged a bankrupt upon a petition filed by him on the day before. In the schedule of assets filed in the bankrupt court he included the lot and buildings and personal property described in his homestead deed and all other property of every.kind owned by him, but indicated in the schedule, conformably to the forms and practice in bankruptcy proceedings, his claim under the State law to the exemption already set apart by him under the homestead deed.

At the first meeting of the creditors, March 4, 1918, before the referee in bankruptcy, three appraisers were appointed for the estate, and William Leigh was named as trustee and took charge of the property. The appraisers subsequently valued the stock of goods at $2,800.00, fixtures and furniture in the store at $165.70, personal property in Canada's dwelling house, $226.70, and real estate (lot and buildings aforesaid), $2,000.00; total, $5,192.40.

At the creditors' meeting on March 4th, mentioned above,

C. H. Beasley and Bros., Inc., among others, appeared by counsel and filed its proof of claim for $623.48.

On March 27th, the trustee made his report, in which he recited, among other things, the conveyance of September 12, 1917, from Canada to his wife, and her reconveyance to him of January 26, 1918, and then said: "Under these circumstances the trustee has grave doubt as to whether the bankrupt's claim of exemption should be allowed. He has set apart the property in the foregoing schedule merely in the automatic performance of a ministerial duty. And he respectfully asks leave of the court to litigate the question of the bankrupt's right to said exemption, and to employ counsel to assist him in said litigation."

On April 3, 1918, Quinn-Marshall Co., one of the creditors represented by the same counsel as Beasley and Bros., excepted to the allowance of the homestead exemption. The exception, however, was not based upon the ground indicated in the trustee's report as his reason for questioning the exemption, but on the ground that the property claimed in the homestead deed amounted in the aggregate to more than $2,000.00. The referee, on July 31, 1918, passed upon this exception, the only one made by any creditor to the allowance of the exemption, as follows:

"I am, therefore, of the opinion and decide that the trustee's report setting apart the homestead exemption should be, and the same is hereby, approved and confirmed. It is, therefore, ordered that the trustee deliver the property in his hands, if any there be, to the bankrupt in accordance with said report."

The stock of goods surrendered by the bankrupt, valued in his schedule at $3,000.00 and appraised at $2,800.00, was sold by the trustee for $2,025.53, Beasley Bros. and Co. claiming and being allowed its share therein as a general creditor of R. C. Canada.

The decrees from which this appeal was taken were ren-

dered in a suit instituted in September, 1918, after all of
the foregoing events and proceedings had transpired, by
C. H. Beasley and Bros., Inc., "on behalf of itself and on be-
half of and for the benefit of all other creditors of *Mrs.
Annie C. Canada,* who may come into this cause and prove
their claims and pay their proper share of the costs." After
alleging the transactions between the husband and wife
and the bankruptcy proceedings hereinbefore set out, and
specifically showing that the complainant had proved its
claim in the bankruptcy court and would share in the dis-
tribution of the proceeds of the estate to be therein dis-
tributed, the bill made the following allegations: "That
Mrs. Canada's attempted retransfer of the stock of goods
to her husband on September 12, 1917, was void by virtue
of the provisions of section 2414 of the Code (1904) ; that
the goods purchased as aforesaid by R. C. Canada after
September 12, 1917, were purchased for Annie C. Canada
and placed in the stock of goods owned by her, and there-
fore she became thereby liable to the creditors for the
amount of said purchases; that her conveyance to him of
the stock of goods by deed of January 26, 1918, was void
because it was a transfer of merchandise in bulk without
compliance with the terms of section 2640-a of the Code
(1904), and that, therefore, under the statute, R. C. Can-
ada became also personally liable along with his wife for
the debt owed by the latter to the complainant amounting
to $623.48, which, as stated in the bill, would be "subject
to the credit of the amounts to be received upon the dis-
tribution to creditors of the assets of the estate of R. C.
Canada in bankruptcy as above set out"; that the complain-
ant, by reason of the above-alleged facts, became a creditor
of Mrs. Canada before she made the deed to her husband
for the real and personal property therein described; and
that the last-named deed was for a consideration not deemed
valuable in law and was made to hinder, delay and defraud

her creditors. The bill makes no attack on the deed of September 12, 1917, from Canada to his wife, but expressly relies thereon and avers that it "created in Annie C. Canada a *fee simple* title in the above-described house and lot," subject to the conditions therein named.

The prayer of the bill is that R. C. Canada and Annie C. Canada be made parties defendant; that the deed of January 26, 1918, be set aside and declared null and void as to the complainant and other creditors of *Annie C. Canada;* that the homestead deed of February 20, 1918, be likewise set aside and declared null and void as to the creditors of *Annie C. Canada;* that the property included in the homestead deed be sold or rented, and the proceeds be held by the court for the benefit of complainant and other creditors of *Annie C. Canada* "subject to the terms and conditions of the said deed from Canada to his wife bearing date September 12, 1917."

To this bill, R. C. Canada and his wife filed certain so-called exceptions and also filed their separate demurrers and answers, and, in addition thereto, R. C. Canada filed a plea of *res judicata,* this plea being based upon the bankruptcy proceedings hereinbefore set out. Evidence was taken in the cause, and the court entered the several decrees appealed from, the effect of which was to overrule the "exceptions," demurrers, plea of *res judicata,* and all defenses set up in the answers, and hold that Annie C. Canada was the owner of the property embraced in the homestead deed; that both Canada and wife were liable to the plaintiff, and that the lot and buildings embraced in the homestead deed should be sold and subjected to the payment of the complainant's debt.

[1] There is no real merit in the appellee's position. It has realized every cent it could have obtained on its debt if none of the transactions between Canada and wife upon which it relies had ever taken place. Its claim was merely

that of a general creditor of R. C. Canada without lien of any kind and without waiver of exemption, and not only is it true that no effort is being made in the pending suit to reach the property on account of any personal liability of R. C. Canada (the suit resting entirely upon the alleged indebtedness of Mrs. Canada), but the homestead deed under the facts of this case cut off the appellee's right to subject the real estate. The exemption, as above pointed out, had been claimed and duly perfected before any of the transfers involved in this suit had been attacked or challenged.

[2] There is no substantial foundation for the contention that the transactions between Canada and wife operated to constitute Mrs. Canada a debtor as to purchases made by her husband after September 12, 1917. It is conceded that these purchases were made by Canada in his own name and solely on his own credit; and the evidence clearly shows that the so-called agreement to resell the stock of goods was made and accepted on September 12, 1917, and that R. C. Canada was then and thereafter continued in actual possession. Under these circumstances it would seem clear that neither section 2414 nor section 2460-a, Code 1904, in any way affected the title which R. C. Canada took under the contract, and that the clause in the deed of January 26, 1918, with respect to the stock of goods amounted to no more than a surplus and wholly unnecessary confirmation of the contract. (The debt of the appellee and the debts of the other creditors for whose benefit the appellee claims to sue were not in existence on September 12, 1917, and there is no contention that section 2460-a affected the resale as of that date.)

[3, 4] Should there be any doubt, however, about the soundness of the above answer to the claim of liability against Mrs. Canada, a conclusive answer is found in the course pursued by the appellee. It certainly knew, when its claim was

filed in the bankruptcy proceedings, of the deed of January 26, 1918, recorded January 28, 1918, and that deed expressly recited the former deed and contract between Canada and wife. Counsel representing appellee filed in the bankruptcy proceedings on behalf of another creditor a certain exception hereinbefore recited to the trustee's recognition of the homestead, and this exception was overruled by the referee and no appeal from that ruling was taken. The trustee's report, calling specific attention to the deed of January 26, 1918, and expressing doubt, arising from its terms, as to the right of Canada to claim the exemption, was not excepted to on any ground by the complainant. Notwithstanding all this, the appellee, with full knowledge of the facts, elected to treat the entire property, real and personal, as belonging to R. C. Canada, and to assert its debt against him alone. Under these circumstances we have no hesitancy in holding that this creditor cannot now assume a different attitude, and claim that the property belonged to Mrs. Canada, and that the debt was due from her. "A party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact, or state of facts, which are inconsistent with each other or mutually contradictory." *C. & O. R. Co.* v. *Rison*, 99 Va. 18, 31, 37 S. E. 320, 324.

The effort to hold Mrs. Canada as a creditor has, therefore, in any view, entirely failed, and this is conclusive of the whole case. The complainant is not seeking to set aside the deed of September 12, 1917, from Canada to his wife, but expressly relies thereon, and the sole purpose of the suit is to set aside the deed of January 26, 1918, from her to him, basing this effort solely upon the theory that Mrs. Canada is a debtor of the complainant. As we have just seen, she is not such debtor, and this destroys the foundation of the suit. There is an averment in the bill to the effect that R. C. Canada, by reason of his purchase through

the deed of January 26, 1918, of the goods in bulk, became indebted by virtue of the provisions of section 2460-a, *supra*, for the debt upon which the complainant sues, but the only purpose of that allegation, as clearly shown by the context, was to justify the complainant's conduct in going into the bankruptcy case as a creditor of Canada and claiming its pro rata in the distribution of the fund realized from sale of the stock of goods which Canada had surrendered and which were being administered in that proceeding. The suit before us was aimed exclusively at Mrs. Canada and depended absolutely upon establishing a liability against her. The effort to show such liability having failed, no case has been made against her, and an order dismissing the bill is the only order which can properly be entered in the cause.

[5, 6] It is perfectly clear that in this proceeding, and under the allegations and facts above disclosed, the homestead exemption claimed and perfected by R. C. Canada and allowed to him in due course in the bankruptcy case, cannot be disturbed. There can be no doubt about the proposition that a court of bankruptcy has jurisdiction to determine the claim of a bankrupt to his exemption. This is expressly declared in sec. 2, ch. 11, 30 Stat. 546 (U. S. Comp. St. §9586), wherein it is said that "courts of bankruptcy * * * are hereby invested * * * with jurisdiction at law and in equity * * * to determine all claims of bankrupts to their exemption." There may be some doubt as to whether this is an exclusive jurisdiction, but none as to the power of the court to determine the question, and when it is determined, then it is settled once for all and cannot be questioned in a collateral proceeding. See *In re Allen* (D. C.) 134 Fed. 620; *McGahan* v. *Anderson*, 113 Fed. 115, 51 C. C. A. 92. The jurisdiction of the bankruptcy courts, however, does not extend fur-

ther than the determination and allowance of the exemption. It had nothing to do with the enforcement of specific liens or other claims against the property paramount to the homestead. *Newberry Shoe Co.* v. *Collier,* 111 Va. 288, 68 S. E. 974; *Lockwood* v. *Exchange Bank,* 190 U. S. 294, 23 Sup. Ct. 751, 47 Law Ed. 1061.

[7] It is not necessary for us to go in this case as far as did the learned judge of the district court for the western district of Virginia in a very careful and instructive opinion in the case of *In re Allen, supra,* holding that section 191 of the present Constitution cannot be construed so as to invalidate a homestead exemption claimed in property fraudulently conveyed unless the conveyance of such property has been annulled by decree of court at the time the claim is asserted. It may be that the decisions of this court in *Dickenson* v. *Patton,* 110 Va. 5, 65 S. E. 529, and *Newberry Shoe Co.* v. *Collier, supra,* are in conflict with this holding of the district court, although neither the *Dickenson Case* nor the *Newberry Shoe Co. Case* makes any reference to the *Allen Case.* But we have before us now a situation very different from that with which the courts were dealing in either of these three cases. In the instant case, the transfers which are challenged had never been in any way questioned when the homestead exemption was claimed and set apart in the manner allowed by law, and the exemption was thereafter duly allowed, without challenge by the complainant, in the bankruptcy proceedings. Under these circumstances, we have no difficulty in holding that the complainant, if it ever had any right to assail the homestead, lost that right by its course in the bankruptcy court, and that the exempted property cannot now be successfully attacked except for the enforcement of some prior lien, or some claim paramount to the exemption.

For the reasons stated, we are of opinion that the decrees complained of are erroneous and should be reversed. An order will be entered in this court dismissing the complainant's bill.

*Reversed.*