# �export Richmond.

## ALEXANDER v. COMMONWEALTH.

### November 15, 1923.

1. APPEAL AND ERROR—*Harmless Error—Failure to Permit Filing of Answer—All Defenses Considered—Case at Bar.*—In the instant case, a suit against appellant to enforce a lien for taxes, the answer of appellant was rejected because not filed within the time required by section 6122 of the Code of 1919. The bill was not taken for confessed as to the appellant. On the contrary, the case was heard upon his deposition, amongst others, and upon his exception to the report of the master. Every defense set up in his answer was set up more in detail in his deposition, and his exceptions to the master's report, which was acted upon by the court, set up every defense made in his answer. He was fully heard on the merits of his contention, both by the commissioner and by the court, and could not have been injured by the ruling on the filing of his answer.

   *Held:* That if the refusal to permit appellant's answer to be filed was error, it was harmless.

2. TAXATION—*Assessment—Void or Improper Assessment—Assessment of Rural Lands as Mineral Lands—Adequate Remedy at Law—Case at Bar.*—In the instant case, a suit to enforce a lien for taxes against land of the appellant, it appeared that the assessing officers had improperly assessed the land as mineral land, whereas, as a matter of fact, the land contained no minerals of value and should have been assessed as ordinary mountain land. Appellant contended that this assessment was not simply erroneous but void and illegal, and that a court of equity, in which he had been impleaded by the Commonwealth, would relieve against it.

   *Held:* That there was no merit in this contention as appellant had a very simple, full and adequate remedy provided by the statute (section 2237, Code of 1919) for the correction of erroneous assessments, and the assessment, although improper, was not void.

3. ESTOPPEL—*Inconsistent Positions in the Same or Successive Suits.*—A party will not be permitted to occupy inconsistent position in the same or in successive suits between the same parties.

4. ESTOPPEL—*Inconsistent Positions in the Same or Successive Suits—Correction of Erroneous Assessments—Case at Bar.*—In the instant case, a suit to enforce a lien on appellant's lands for taxes, appellant con-

tended that the assessment was void, and that as he had been impleaded by the Commonwealth in a court of equity, the court would relieve against it. Appellant had a simple and complete remedy under section 2237 of the Code of 1919 to correct the erroneous assessment, and he had availed himself of that remedy for assessments of other years, when he had alleged that the land was improperly assessed but in no way intimated that the assessment was a void assessment.

*Held:* That in the present suit appellant would not be allowed to occupy the inconsistent position that the statute for the correction of erroneous assessments did not apply.

5. TAXATION—*Assessment—Mineral Lands—Annual Assessment.*—Section 172 of the Constitution of 1902 provides that the General Assembly shall provide for the special and separate assessment of all coal and other mineral land. Pursuant to this provision, sections 2234-2240, Code of 1919, provided for annual assessments of mineral lands.

*Held:* That the special and separate assessment of "coal and other mineral land" is made under section 172 of the Constitution, and not under section 171, which provides for the assessment of land generally only once in every five years, and the legislature was not restrained by section 172 of the Constitution as to the time and manner of assessment.

6. TAXATION—*Assessment—Mineral Lands—Annual Assessment of Surface—Case at Bar.*—Whether or not, in view of the addition to section 2235 of the Code of 1919 by the revisors and the revisors' note upon that section, the value of the surface of mineral land can be changed, except upon reassessment every five years, it was not necessary to determine in the instant case, as there had been no change in the surface valuation of the land in question since 1915, except a slight reduction. If the act of 1912, carried into the Code of 1919 as sections 2234 to 2240, allowed an annual assessment of the surface of mineral lands not authorized by section 171 of the Constitution of 1902, and was to that extent unconstitutional, still the appellant in the instant case was not injured by it, as the assessment of 1915 still remained in force and the tax was validly imposed thereunder.

7. TAXATION—*Assessment of Mineral Lands—Assessing Officers to Determine Whether Land Taxable.*—Whether or not land is taxable as mineral land is a question to be decided in the first instance by the assessing officers, subject to review and correction under section 2237 of the Code of 1919. Jurisdiction is conferred on these officers to decide that question, and, if they commit errors, the statute provides a simple method of correction, but their action is not void and is not subject to collateral attack.

8. TAXATION—*Assessments—Collateral Attack.*—The officers whose duty it is to fix the assessments, whether as original assessors, or as boards of equalization and review passing upon the work of the assessors,

act in a judicial or *quasi* judicial capacity, and their findings, when made in good faith and in the exercise of an actual jurisdiction, are like the judgment of courts, secure from collateral attack. Findings which for fraud or lack of jurisdiction are void may be collaterally attacked, but an assessment will not be rendered void, and thus exposed to collateral attack, by irregularities or errors honestly committed in the exercise of official discretion.

9. TAXATION—*Suit in Equity to Enforce Lien for Taxes—Equitable Defenses.* —In the instant case, a suit in equity to enforce a lien for taxes against land of appellant, it was urged on behalf of appellant that, as the Commonwealth had impleaded him in a court of equity, that court would put the complainant on terms of allowing equitable defenses in the way of abating an admittedly erroneous and excessive demand.

*Held:* That there was no force in this contention, as the Commonwealth did not go into the court under its general equity jurisdiction. The jurisdiction invoked was purely statutory, and is given without condition. There is no appeal to the conscience of the chancellor, but an application for the enforcement of a plain statutory remedy unconditionally conferred, and the chancellor has no power to impose conditions.

10. EQUITY—*Suit to Enforce Lien of Judgment—Suit to Enforce Lien for Taxes —Collateral Attack.*—A suit in equity to enforce a lien for taxes is very similar to a suit in equity to enforce the lien of a judgment on land. In a suit in equity to enforce the lien of a judgment, the validity of the judgment cannot be called in question, as that would be a collateral attack. So, in a suit in equity to enforce the lien for taxes the taxpayer cannot assail the validity of the assessment where the assessment is not void, but voidable, as that, too, would be a collateral attack.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for complainant. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Rudolph Bumgardner,* for the appellant.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile, Second Assistant Attorney-General, E. Warren Wall* and *J. Vaughan Gary,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

This was a suit in chancery by the Commonwealth of Virginia brought in June, 1917, against the appellant, John A. Alexander, to enforce a lien for taxes for the year 1916 on a tract of 23,400 acres of land, and the underlying minerals, and on the minerals underlying another tract of 1,500 acres. There is no controversy as to the latter and it may be dropped from further consideration. The bill was subsequently amended to introduce new parties who were supposed to have an interest in, or a lien upon, the land. In May, 1918, there was an order for an account of liens and their relative priorities. In June, 1918, appellant appeared by counsel and suggested the pendency in the Circuit Court of Augusta county of an injunction suit seriously affecting his interest in the 23,400 acre tract, and in August, 1918, an order was made directing the master, to whom the case had been referred for account, not to report on the merits of the controversy in the suit in Augusta county. All further proceedings were thereupon suspended in the present suit until the latter part of 1920. In the meantime the controversy in the Augusta suit was decided in favor of the appellant. In December, 1920, the master, after notice to all the parties, began taking proof on the matters referred to him. His report was not filed till April, 1921. In his report he found the appellant indebted to the Commonwealth for taxes from 1915 to 1920, both inclusive, and for each of said years except 1920 the taxes were not only upon the assessed value of the surface, but also upon the assessed value of the underlying minerals and upon the improvements, machinery and fixtures on the land. The aggregate amount of all these taxes, including penalties and interest, was ascertained to be $4,609.48.

In January, 1921, Alexander filed his petition in the Circuit Court of Rockingham county for the correction of the assessment of his land for the year 1920, in which he asserted that his land had been improperly classified as mineral land; that there were no underlying minerals of value and no improvements or fixtures on the land, and praying "that said assessment be corrected in accordance with the statute in such case made and provided," and that his land be assessed as ordinary mountain land. At the following February term of the court, the application was heard on its merits, and it appearing to the court upon the evidence adduced that the said tract is unimproved mountain land and has virtually no mineral value, it was ordered that said land be assessed as land of the fair market value of seventy-five cents per acre. The land had been previously assessed at $1.00 per acre for the surface, $1.00 per acre for underlying minerals, and $1,500.00 for improvements, machinery and fixtures. The result of the court's order was to reduce the taxes for 1920 from $876.47 to $341.58 and the latter sum was reported by the master as the tax for 1920.

After the Commonwealth had completed its evidence in the present suit and rested its case before the master, to-wit, on March 4, 1921, the appellant, Alexander, testified at length and in detail before the master, in his own behalf.

A few days after this, on the 12th day of March, 1921, appellant's counsel mailed the master appellant's answer, the exhibits referred to in his deposition, and a brief of authorities, with request that he have the clerk mark the answer filed. The master notified him that the Commonwealth objected to the answer as coming too late, and that he had the clerk make endorsement thereon showing that it had been filed in the office on March 25, 1921.

The master completed and filed his report on the 19th day of April, 1921, and the case was set for argument on the 6th day of July, 1921. On that day counsel for appellant tendered in open court his answer, his several exceptions to the master's report, and the case was argued on brief and orally; and on the 28th of October, 1921, the court entered the decree complained of, rejecting the answer, overruling the exceptions, confirming the report of the master, and decreeing a sale of the land for the taxes for the years 1915 to 1920, all based on the "special and separate" *classification as* "coal and other mineral land."

The exceptions filed by the appellant to the master's report were as follows:

"1. Because the master ascertains and reports that there is due from defendant the sum of $4,609.48, as of April 1, 1921, by way of unpaid taxes, for the years 1915 to 1920, both inclusive.

"2. Because the master fails to find that the assessment of the defendant's land is illegal and void.

"*2nd.* Because the master fails to allow the defense set up in the answer and established by defendant's evidence.

"3rd. Because the master fails to allow the defendant credit to the extent that the taxes asserted in the bill of complaint are based on values for underlying minerals, and improvements, machinery, etc., which are non-existent.

"4th. Because the master does not find that the taxes in question as levied on an erroneous classification of said lands as mineral lands under the special statute; and annul said assessment, charging the defendant in lieu thereof with the taxes for said year in a fair valuation of said lands as ordinary mountain lands on the same basis as lands of similar character in that section of the country."

[1] The answer of the appellant was rejected because not filed within the time required by section 6122 of the Code. The appellant claimed that the section of the Code referred to had no application to the facts of this case.

The refusal to permit this answer to be filed is the first error assigned, but it is unnecessary to pass on it. If it was error it was harmless. The bill was not taken for confessed as to the appellant. On the contrary, the case was heard upon his deposition, amongst others, and upon his exception to the report of the master. Every defense set up in his answer, was set up more in detail in his deposition, and his exceptions to the master's report, which was acted upon by the court, set up every defense made in his answer. He was fully heard on the merits of his contention, both by the commission and by the court, and could not have been injured by the ruling on the filing of his answer.

[2-4] The chief controversy arises on appellant's second assignment of error, which is as follows:

"The refusal of the court to grant relief against the void, illegal, and erroneous taxes, and to reform the tax lien by charging defendant's lands with the taxes properly chargeable thereon under a proper classification and valuation."

Prior to 1915 the 23,400 acre tract had been assessed simply as mountain land, but in that year the assessing officers, in pursuance of section 172 of the Constitution and acts of 1912, page 162, classified it as mineral lands, assessing the surface at $23,400.00, the underlying minerals at $23,400.00 and improvements at $1,500.00. The contention of the appellant is that the classification and assessment are not simply erroneous but illegal and void, and that a court of

equity, in which he has been impleaded by the Commonwealth, will relieve against them.

He had a very simple, and a full, adequate and complete remedy provided by the statute for the correction of erroneous assessments (Code, section 2237, Acts 1912, page 162) of which he availed himself for the years 1920 and 1921, and he will not be allowed now to say that the statute does not apply to his case. In his petition to correct the assessment for 1920 he states that "said land is improperly assessed as 'mineral land' and should be assessed as ordinary mountain land," that "said assessment is excessive," and the prayer is that "said assessment *is* corrected in accordance with the statute in such case made and provided; that correction be made," etc. There is no intimation that the assessment was a void assessment, but the allegation is that the land was *"improperly assessed"* and that *"said assessment is excessive."* It has been repeatedly held by this court that a party will not be permitted to occupy inconsistent positions in the same or in successive suits between the same parties. *Chesapeake & Ohio R. R. Company* v. *Rison,* 99 Va. 18, 37 S. E. 320; *Canada* v. *Beasley,* 132 Va. 166, 175, 111 S. E. 251.

[5, 6] Section 172 of the Constitution makes ample provision for the assessment of mineral lands. That section is as follows:

"The General Assembly shall provide for the special and separate assessment of all coal and other mineral land, but until such special assessment is made, such land shall be assessed under existing laws."

Pursuant to this provision the legislature enacted the statute of March 7, 1912, amending a former statute on the subject, under which the assessment complained of was made. This statute was divided into sections and carried into the Code as sections 2234 to 2240,

without change, save the addition to section 2235 of the following paragraph: "The annual assessment of the surface under this section shall not in any case, however, exceed the amount assessed thereon at the last general assessment of lands in the Commonwealth." The constitutionality of this section is very earnestly assailed because it does not conform to section 171 of the Constitution which provides for the assessment of land generally only once in every five years, whereas mineral lands are made assessable under the statute annually. The special and separate assessment of "coal and other mineral land" is made under section 172 of the Constitution and not under section 171, and the legislature is not restrained by section 172 as to the time and manner of assessment. The paragraph added by the revisors to section 2235 expressly mentions the *annual* assessment of the surface. Whether or not, in view of the addition to section 2235 and the revisors' note thereto, the value of the surface of mineral land can be changed except upon reassessment every five years presents an important question, but one we are not now called upon to decide as there has been no change in the surface valuation in this case since 1915, except a slight reduction arising from a reduction in the area taxed. If the Act of 1912 allows an annual assessment not authorized by section 171 of the Constitution and is to that extent unconstitutional, still the defendant was not injured by it as the assessment of 1915 still remains in force and the tax was validly imposed thereunder. *Camp Mfg. Co.* v. *Commonwealth* 110 Va. 506, 66 S. E. 224.

[7] Whether or not the land was taxable as mineral land was a question to be decided in the first instance by the assessing officers, subject to review and correction under the statute under which the appellant sought

and obtained relief for the years 1920 and 1921. Jurisdiction was conferred on these officers to decide that question, and if they committed errors, the statute provided a simple method of correction, but their action was not void. They acted in a *quasi* judicial capacity, in the manner required by a valid statute, and within the jurisdiction conferred upon them. In 26 R. C. L. 452, it is said:

"Where the law provides a remedy for over-assessments by petition to the assessors or to some other tribunal for abatement, the statutory remedy is exclusive and the tax stands as assessed until abated in accordance with the law, if the assessors had. jurisdiction to make the assessment. The action of assessing officers being judicial in character, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some mode pointed out by statute they are conclusive, whatever errors may have been committed in the assessment."

[8] In 27 Am. & Eng. Encl. Law (2nd ed.) 725, sustained by abundant authority, it is stated thus:

"The officers whose duty it is to fix the assessments, whether as original assessors, or as boards of equalization and review passing upon the work of the assessors, act in a judicial or *quasi* judicial capacity, and their findings, when made in good faith and in the exercise of an actual jurisdiction, are like the judgment of courts, secure from collateral attack. Findings which for fraud or lack of jurisdiction are void may be collaterally attacked, but an assessment will not be rendered void, and thus exposed to collateral attack, by irregularities or errors honestly committed in the exercise of official discretion."

While the assessing officers erred in classifying this

land as mineral land, they were not wholly without evidence to support their action. Iron mines had been opened on the land, a furnace built, and the business of making iron had been actively carried on during the war (1861-5) and the furnace operated as late as 1868, and it is not claimed that the mines had been exhausted, but that the value of the ore has been destroyed by changed processes of manufacture. The evidence shows that the ore has had a speculative value for years, and the appellant himself testified: "When I purchased it, I considered that one of the principal items of value there was the mineral." But after his purchase he had the ores tested and found that they had no commercial value. The classification of the assessing officers was erroneous and their valuation of the minerals excessive for both of which errors the statute (Code, section 2237) provides a simple, inexpensive and speedy remedy, but their action was not beyond their jurisdiction and void.

In *Commonwealth* v. *Tredegar Co.*, 122 Va. 506, 510, 95 S. E. 279, 280, in speaking of the statute for the correction of erroneous assessments made by the commissioner of the revenue, it is said: "The remedy by motion under the statute is prompt and simple, and as construed by this court is peculiarly adapted to a fair and just settlement of disputes of this character between the Commonwealth and its citizens."

[9, 10] It is urged on behalf of the appellant that as the Commonwealth has impleaded him in a court of equity, that court should put complainant on terms "of allowing equitable defenses in the way of abating an admittedly erroneous and excessive demand." But the Commonwealth did not go into that court under its general equity jurisdiction. The jurisdiction invoked is purely statutory, and is given without con-

dition. There is no appeal to the conscience of the chancellor, but an application for the enforcement of a plain statutory remedy unconditionally conferred, and the chancellor had neither the right nor power to impose conditions on the exercise of the jurisdiction so plainly conferred. The suit is very similar to a suit in equity to enforce the lien of a judgment on land. Compare, *McClanahan* v. *Norfolk & Western Railway Co.*, 118 Va. 388, 87 S. E. 731. Neither could the appellant, in the suit, assail the validity of the assessment, for, as we have seen, the assessment was not void, but at most only voidable, and hence was valid until corrected or set aside, and could not be collaterally assailed. In a suit in equity to enforce the lien of a judgment, the validity of the judgment cannot be called in question as that would be a collateral attack. *Fulkerson* v. *Taylor*, 102 Va. 314, 46 S. E. 309. The same principle applies here.

Undoubtedly a great pecuniary burden has been erroneously placed upon the appellant, but it is a burden from which he could have as easily relieved himself in 1915 and subsequent years as he did in 1921, by invoking the statute enacted for his benefit. This he failed to do and the burden he has to bear is one from which neither the trial court nor this court can relieve him. The decree of the trial court will, therefore, be affirmed.

*Affirmed.*