JESS KELLER *v.* NORFOLK & WESTERN RAILWAY COMPANY *et al.*

(No. 7095)

Submitted September 27, 1932.   Decided December 6, 1932.

(Rehearing denied February 3, 1933.)

*Strother, Sale, Curd & St. Clair,* and *J. Powell Royall,* for plaintiff in error.

*Goodykoontz & Slaven, Crockett & Tucker,* and *F. M. Rivinus,* for defendants in error.

HATCHER, PRESIDENT:

A verdict awarding the plaintiff damages for personal injuries was set aside by the trial court and the plaintiff obtained a writ of error.

This is the second time this case has been before us. For convenience, the facts and the ruling on the first trial as contained in *Keller* v. *N. & W. R. Co.,* 109 W. Va. 522, 156 S. E. 50, follow:

> "About eight o'clock on the morning of April 16, 1929, H. C. Keller and his three sons, Clay, Charles and Jess, aged eighteen, thirteen and ten years, respectively, started across a private railroad crossing in a Ford roadster. The car was struck from the right by a regular passenger train of defendant (running on time) causing the death of Keller and injuries to Jess. Clay was on the left of the seat, driving the car; the father was on the right, and the little boys were between them. Clay testified that he looked for and saw no train before going on the crossing; that in watching for a train he allowed the car to get a little off the crossing; that the rear wheels were checked by the second rail, stalling the engine and leaving the rear part of the car (only) on the track; that he then looked again and saw no train, but did not look any more; that while trying

to start his engine, the car was struck by the train without any warning of its approach until within a few feet; that the car stalled about one and one-half minutes before the collision; and that he did not know whether his father looked for the train or not. The testimony of Charles and Jess is substantially the same as that of Clay. A number of witnesses for plaintiff say they heard no train signals closer than a mile or so to the crossing until they heard distress signals just before the collision. Evidence for plaintiff fix the distance at which the crossing could be seen from the track at from about nine hundred to sixteen hundred feet.

"The version of the trainmen is that the fireman and engineer could see the crossing at distances of about 900 and 500 feet respectively; that the whistle was blown as a crossing warning in the bend about one-half mile from the crossing; that at a distance of some eight or nine hundred feet the fireman noticed the car approaching the crossing and commenced ringing the bell; that when he saw the car was not stopping, he blew the whistle; that the engineer was watching the track and did not see the car until it was right at the crossing; that he immediately threw on the emergency brake and applied the sand, which was all he could do as the train was 'drifting' at the time; and that the car was entirely upon the crossing when it was struck. C. J. Jeter, a witness for the plaintiffs, supports the engineer as to the whistle being blown in the bend above the crossing. The testimony of the trainmen as to the position of the roadster at the moment of collision is confirmed by the following undisputed and unquestioned evidence. (a) The ground was scraped for a distance on the outer side of each rail. (b) There is an indentation about six inches deep in the right door (sheet steel) of the car, which was received in the collision and which corresponds exactly to the dimensions of the knuckle of a steel coupling on the pilot beam of the engine. (The beam extends across the front of the engine about thirty inches above the rail, and the coupling is in the exact center of the beam.) (c) Two iron steps, one on each side of the pilot beam, were 'bent in'.

"Had the car been at the place located by plaintiffs when it was struck, the ground would have been scraped on both sides of the second rail only; the indentation of the coupling knuckle would have

appeared somewhere on the rear of the car, if at all, and only one step would have been bent in. The proven physical facts demonstrate that plaintiffs' witnesses are confused as to the position of the car at the moment of collision; and that instead of merely the rear of the car being on the track, the entire car was on it, the center of the car being about the the center of the track. The plaintiffs have no explanation whatever of why the car was squarely on the track when it was struck. Testimony for defendant, which is also undisputed, shows that when sufficient power had been exerted to propel a car like the roadster up on the crossing, the acquired momentum of the car alone would roll it across and free of the track. So the theory that the roadster had been stalled at the actual place of collision is hardly tenable. It is incumbent on the plaintiffs to show just how and why the entire car happened to be on the crossing when struck. Until they show that, we have no way of determining just what prior duty the trainmen owed them, or whether that duty was breached. Verdicts based on oral evidence, controverted by established physical facts, as in these cases, cannot stand. *Owen* v. *Appalachian Power Co.*, 78 W. Va. 596, 609, 610, 89 S. E. 262; *Waller* v. *Ry. Co.*, 108 W. Va. 576, 152 S. E. 13; 46 C. J., p. 183, sec. 138.''

In an able discussion of the doctrine of the last clear chance by Robert T. Donley, Esq., in the June, 1931, issue of the West Virginia Law Quarterly, 362, 372, the following question was asked in relation to our holding in the former opinion: ''Admit that those facts show that the car was entirely on the crossing, how does that nullify the testimony of the plaintiff that it remained there for one and one-half minutes before the train struck it?'' The brief of plaintiff on the instant writ quotes that question and we are glad of opportunity to answer it. It was not the fact that the roadster was entirely on the crossing, alone, which nullified plaintiff's evidence that it had been stalled for one and one-half minutes, but the demonstration that when in that position momentum and gravity would have caused the roadster to roll off the crossing unless voluntarily restrained.

Upon the second trial only one witness, Clay Keller, attempted to locate the position of the roadster at the moment

of collision and to state the duration it had been in that position. His testimony in chief is that he inadvertently allowed the "front wheel" (presumably the right wheel) of the roadster to go over the first rail about a foot to the right of the travelled way of the crossing; that the front wheels of the car may have gone some two feet beyond the first rail, or maybe not, but he does not believe that they crossed the second rail; that something—he does not know what—against his wheels then stalled the car, and that he guessed he was stalled about "a minute or a half minute". (As the wheel base of the roadster was eight feet and seven and one-half inches, and the gauge between the rails is four feet, eight and one-half inches, it will be noted that this location placed the rear wheels some four feet or more from the first rail, and some eight feet or more from the second rail.) On cross-examination, his testimony upon the first trial of this case, as well as upon the trial of its companion case, *Lena Keller, Adm'rx. v. N. & W. Ry. Co.*, was read to him wherein he had repeatedly said that the rear wheels of the Keller automobile bounced over the first rail and stopped in the center of the track. Whereupon, he admitted that the circumstances was fresher in his mind at the former trials and stated that he told the truth in regard thereto at those trials.

The reason stated by the circuit court for setting aside the verdict was "that it would be improper to permit the plaintiff to take a position in the second trial which is inconsistent with that taken on the former trial." Counsel for plaintiff contend that the rule as to "inconsistent positions" relates only to matters vital to plaintiff's recovery and does not apply here, because it is immaterial whether the car stalled on the second rail or astride the track. That contention is inconsiderate of the evidence. It is vital to plaintiff's recovery to show that the roadster was stationary on the track a sufficient length of time for the trainmen to have observed its plight and prevented the collision. Plaintiff gives as the reason for the roadster's being stationary *that it was stalled.* It is assuredly vital to his recovery to show that the roadster was stalled *where it was*—not *where it was not*. It was not stalled on the second rail, and on neither trial was any evidence whatever produced that the car was stalled, or could

have been stalled, in its actual position when struck—squarely astride the track on the crossing. A fabricated location of the roadster does not sustain the burden of proof.

Plaintiff's brief takes the further position that the rule as to "inconsistent positions" is not applicable here because the inconsistency, "if any", was manifested by a witness and not by plaintiff himself, citing *Carter* v. *Ry. Co.*, (Va.) 95 S. E. 464. That decision discusses the rule of "law of the case", instead of the doctrine of shifting positions. The weight of authority holds that a party to an action is ordinarily concluded by his testimony on a material matter. Since the object of an estoppel in such case is to discourage fiction and uphold the sanctity of an oath, it is not apparent why the doctrine should not apply to all witnesses alike, whether parties or not, although some jurisdictions do not so hold. See generally, 21 C. J., subject Estoppel, sec. 241; *Smith* v. *Ry. Co.*, 184 Fed. 387, 389; *Hamilton* v. *Zimmerman*, 5 Sneed (Tenn.) 39, 48; *Dempsey* v. *Tr. Co.*, (Mo.) 256 S. W. 155, 157. It seems logical, as said by Lord Cockburn, C. J., in *Richard* v. *Morgan,* 4 B & S. 641, 661, that "Where a witness is called for the purpose of proving a particular fact, this amounts to an assertion of that fact by the party who so uses his testimony." We so held in *Canning Co.* v. *Throwing Co.*, 98 W. Va. 487, 496, 128 S. E. 280, and further held that the party was bound by the answer of the witness upon a subsequent trial. Moreover, it further appears: (1) that the declaration alleges "the back end of said automobile (the roadster) was in the direction in which said train was coming"; (2) that at the first trial plaintiff introduced in evidence a photograph, which his counsel stipulated portrayed "the contention of the plaintiff as to the location and position of the automobile when it was struck, which location and position was pointed out to the photographer by witness Jess Keller at the time the photograph was taken" (In the photograph the posed automobile was partly on and partly off the crossing; the right rear wheel was against the second rail, the left rear wheel was about one and one-half feet inside the first rail and three feet from the second rail, and the car was so askew that its back would have been struck by the train which struck the Keller roadster.); (3) and that upon the first writ

292

of error, counsel for plaintiff contended for that location in this court. The declaration, the stipulation and the contention of counsel demonstrate that counsel deliberately adopted and consistently maintained for plaintiff the location of the Keller roadster as then made by Clay. ''When an absolute and unqualified admission is made in a pending case, whether by written stipulation of the attorney, or as matter of proof on the hearing, it cannot be retracted on a subsequent trial, unless by leave of court.'' *Owen* v. *Cawley,* 36 N. Y. 600, 605-6. The stipulation as to the photograph is receivable now as a judicial admission. 22 C. J., subject Evidence, sec. 385. This Court held in *Clark* v. *Clark,* 70 W. Va. 428, 433, 74 S. E. 234, that such an admission was conclusive. That holding should suffice, but some observations on the principle underlying it may be pertinent.

The origin of the doctrine of estoppel is lost in antiquity. Some have treated the doctrine as ''first laid down in the case of *Picard* v. *Sears,* 6 Ad. & E. 469,'' decided in 1837. That treatment is myopic. Erle, C. J., in *White* v. *Greenish,* (1861) 11 C. B. (N. S.) 209, 229, was of opinion that traces of the doctrine could be found in the English law books ''two or three centuries earlier'' than *Picard* v. *Sears.* ''Traces'' had been found by Lord Coke (1552-1634) who referred to estoppels quaintly as ''an excellent and curious kind of learning.'' 3 Coke upon Littleton *352a. Herman in his work on Estoppel, section 738, is of opinion that no code of laws was ever formulated which did not contain some element of that doctrine. It is in the Talmud. It had been reduced to certain maxims at the time of Justinian, one of which is apposite here : *Allegans contraria non est audiendus.* (He is not to be heard who alleges things contradictory to each other.) Broom's Legal Maxims (9th Ed.) 116. And a thousand years before Justinian the attitude of primitive people towards duplicity is well illustrated by the fable of Aesop where the satyr said to the traveller : ''Be off with you! I will have no part with a man who can blow hot (to warm his hands) and cold (to cool his pottage) from the same mouth.'' Indeed the phrase of Aesop has found favor with jurists and textwriters. That great chancellor, Lord Kenyon, sanctioned its use in 1791, in discussing an estoppel in *Smith* v. *Hobson,* 4 T. R. 212, 217,

saying, "they cannot, as has often been observed in cases of this kind, *blow hot and cold."* See also *Cave* v. *Mills,* 7 Hurl. & N. 914, 927-8; *Royster* v. *Heck,* (Ky.) 94 S. W. 8, 11; Broom, *supra;* and Herman, *supra,* secs. 1039 and 1940. At one time, some courts applied estoppels hesitantly as *odious.* But as noted by the supreme court of Virginia in 1873: "The doctrine of estoppel, has, in a great measure, been reduced to consonancy with common sense and justice." *Bower* v. *McCormick,* 23 Gratt. 310, 321. The highest court of our land took the position in 1880 that the doctrine is "wise and salutary * * * a means of repose. It promotes fair dealing. * * * Without it society could not well go on." *Daniels* v. *Tearney,* 102 U. S. 415, 420. Bigelow on Estoppel (6th Ed.) 783, states without qualification the modern attitude of the courts, as follows: "If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of a litigation must act consistently with it; one cannot play fast and loose." Accord: Caspersz, Estoppel (4th Ed.), sec. 438; Black on Judgments (2nd Ed.), sec. 632; 10 R. C. L., subject Estoppel, sec. 27; 21 C. J., *supra,* sec. 227; *Weston* v. *Ralston,* 48 W. Va. 170, 186-7, 36 S. E. 446; *Lee Comte* v. *Freshwater,* 56 W. Va. 336, 341, 49 S. E. 238; *McDonald* v. *Long,* 100 W. Va. 551, 131 S. E. 252; *Ry. Co.* v. *Commission,* 104 W. Va. 183, 187, 139 S. E. 744; *Bank* v. *Wilson,* 109 W. Va. 684, 158 S. E. 517; *Ealy* v. *Ice Cream Co.,* 110 W. Va. 502, 158 S. E. 781.

Counsel for plaintiff place special reliance on *Steinman* v. *Coal Corp.,* 121 Va. 611, 93 S. E. 684 (and cases therein cited), as opposing the above pronouncement. That opinion does not take into consideration the doctrine of estoppel; so we cannot regard it as persuasive on this subject. The doctrine is supported by later decisions of that eminent court in *Bliss*

v. *Spencer,* 125 Va. 36, 99 S. E. 593; *Canada* v. *Beasley,* 132 Va. 166, 111 S. E. 251; *Arwood* v. *Hill,* 135 Va. 235, 117 S. E. 603; *Alexander* v. *Comm.,* 137 Va. 477, 120 S. E. 296; *Fitchett* v. *Parsons,* 142 Va. 163, 128 S. E. 457; *Bank* v. *Bank,* 149 Va. 168, 140 S. E. 272; *Nagle* v. *Syer,* 150 Va. 508, 143 S. E. 690; and *Byrd* v. *Ry. Co.,* 151 Va. 954, 145 S. E. 722.

The plaintiff's brief says that because of his infancy he should not be held to the same strictness of the rule as an adult. The general proposition that the doctrine of estoppel does not apply to an infant, relates mainly to his personal conduct and property rights. When he enters the courtroom, he becomes virtually the ward of the court, and his interests will be protected carefully by the court. But he must have legal representation there, and the orderly conduct of litigation demands that such representative have power to bind the infant by his proper and lawful acts. "In such case," said the Supreme Court of New Hampshire after a careful review of the authorities, "the attorney becomes clothed with the ordinary powers pertaining to an attorney of record. His authority is as extensive as it is in other cases, and the infant, * * * is bound by the attorney's acts within the ordinary scope of his authority the same as an adult would be, and has a like remedy against the attorney for any abuse of such authority, express or implied." *Beliveau* v. *Amoskeag Co.,* 68 N. H. 225, 228, 40 A. 734. Accord: *Butler* v. *Winchester,* 216 Mass. 567, 569, 104 N. E. 451; *Ralston* v. *Lahee,* 8 Iowa 17, 74 Am. Dec. 291, 297; 12 Stand. Ency. of Procedure, 762 sec. F; 31 C. J., subject Infants, sec. 248 (and cases cited under note 29). To hold arbitrarily that eminent counsel (such as appear for plaintiff) when representing an infant, could not with the consent of court (tacit in this instance) make the concessions and admissions usually made in conducting a trial, would be to discredit counsel and impugn the court, a holding we will not make. *Eidam* v. *Finnegan,* 48 Minn. 53, 56, 50 N. W. 933. The rule of inconsistent positions is not absolute even against an adult. Leave to withdraw a judicial admission may be granted by the court, upon timely notice and a proper showing of mistake, imposition or surprise. *Owen* v. *Cawley, supra;* 22 C. J., *supra,* sec. 370. As thus safeguarded we have no hesitancy in applying the rule to the instant case.

This Court, with few exceptions, has maintained the rule that a decision "on a particular point on a former hearing will be regarded as the law of the case on a second appeal unless new pleadings and new evidence adduced on the subsequent trial call for a different judgment." *Canning Co.* v. *Throwing Co., supra.* See also, *Mining Co.* v. *Coal Co.,* 10 W. Va. 250; *Henry* v. *Davis,* 13 W. Va. 230; *Beecher* v. *Foster,* 66 W. Va. 453, 66 S. E. 643; *Kaufman* v. *Catzen,* 100 W. Va. 79, 130 S. E. 292; *Leitch* v. *Ry. Co.,* 101 W. Va. 230, 133 S. E. 140; *Hager* v. *Coal Co.,* (decided by this court June 11, 1932), 112 W. Va. 479, 164 S. E. 666. That rule, of course, contemplates that *the new evidence* adduced will be legitimate evidence. There is no new evidence which is material in the instant case. Clay's attempted innovation became figmental when (on cross-examination) he said he spoke the truth at the former trials. With that statement, the same case is presented now as before, there being no amendment to the declaration.

It is well settled that the plaintiff, though an infant, is bound by our former decision just the same as an adult. *Sinnett* v. *Goff,* 89 W. Va. 629, 633, 109 S. E. 820. "Sympathy for an infant, whose suit is conducted by another, should not induce the making of bad precedents" was properly said of the instant case by Judge Lively.

No recoverable case was presented for plaintiff, and the judgment of the circuit court is affirmed.

*Affirmed.*