## CIRCUIT COURT OF THE CITY OF ROANOKE

Principal Residential
Mortgage Corp.

    v.

Darlene Curtis

February 10, 2003

Case No. CL02-474

BY JUDGE CLIFFORD R. WECKSTEIN

    This is an action for unlawful detainer. There are no material facts in dispute. Counsel have filed comprehensive memoranda of law. At a hearing on February 20, 2003, for which notice already has been given, the court will enter summary judgment in favor of the plaintiff, directing that execution issue and awarding the plaintiff a writ of possession.[1]

    The agreed-upon facts in this case are many and convoluted. I recite only those that are necessary for decision. With money borrowed from

---

[1] The defendant's attorney, Gary Bowman, wrote to the court and opposing counsel in mid-January, acknowledging the February 20 hearing, and advising that he had been called to active duty in the United States Army but hoped to participate in the February 20 hearing by conference call. On January 28, the plaintiff mailed to the office of defense counsel notice of a hearing to be held on February 6, 2003. Webb King, plaintiff's counsel, appeared on February 6, advised the court that the hearing had somehow been scheduled without coordination with the defendant's attorney, extended apologies to the absent Col. Bowman, and asked the court to carry over to February 20 the motions purportedly noticed for February 6. The question of whether to enter summary judgment had been thoroughly briefed and submitted for decision before Col. Bowman was called to active duty.

plaintiff Principal Mortgage, defendant Curtis bought a home. Her promise to repay this purchase money loan was secured by a deed of trust on the property; repayment of the note was guaranteed by the U.S. Department of Housing and Urban Development. She failed to pay the deed of trust note in accordance with its terms, the plaintiff foreclosed on the note, and the property was sold at foreclosure sale. Despite the fact that the property was sold at foreclosure, the defendant continues to occupy it.

Curtis's defense to Principal's claim for possession of the property is the assertion that Principal failed in its statutory duty in an HUD-guaranteed loan to "engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loss modification, and deeds in lieu of foreclosure, but including assignment of mortgages to the Secretary.)" 12 U.S.C. 1715u(a); *also see* 24 C.F.R. 203.501.

The argument is made, however, in a context that includes the following stipulated facts. For most of the four and a half years before foreclosure, the defendant was delinquent in her payments. The first time that foreclosure was advertised, she avoided it by bringing her payments current. A month after avoiding foreclosure, she missed another payment. From March 1998 through June 2001, she continued to be seriously delinquent in her payments. During this period, the parties entered into three different repayment plans which would have allowed Curtis to cure her delinquency. She failed to comply with any of them. Principal Mortgage sent Curtis numerous notices describing her delinquency, notifying her that there were a variety of options to avoid foreclosure. It sent her a pamphlet that outlined loss mitigation options, and urged her to make contact with the mortgage company in order to discuss the options. Principal telephoned Curtis twenty-one times to discuss her delinquency. Principal then completed a Foreclosure Review checklist in September 1999, which stated in part that Curtis had failed to respond to any of the delinquency notices or phone calls. On November 18, 1999, Curtis filed a petition under Chapter 13 of the Bankruptcy Code. That filing, of course, stayed proceedings against her. Approximately a year later, the parties, with approval of the Bankruptcy Court, agreed that the "automatic stay" would terminate if Curtis defaulted in her payments under her Chapter 13 repayment plan. She failed to comply with the terms of her plan, and the automatic stay was lifted on April 5, 2001. A foreclosure sale was conducted in June 2001. Curtis's pleadings and memoranda do not suggest what type of loss mitigation plaintiff should have, but did not, offer her. Nor is she able to find any cases that support the proposition that such failure would, after foreclosure sale, constitute a defense to an action for unlawful detainer.

Curtis has, by her own actions and omissions, rendered the question immaterial.

On July 11, 2002, this court entered an order, agreed to by both parties, providing that, while this case was pending, the defendant would make her monthly note payment to the Clerk of this court. She was to make her July payment of $516.68 by the end of that month and then pay the same amount on or before the 15th day of each month, beginning on August 15, 2002. The Clerk would hold these funds, subject to further order. *Compare* Code § 55-248.25:1 (landlord-tenant statute) ("the court shall, upon the request of the landlord, order the tenant to pay an amount equal to the rent that is due . . . into the court's escrow account . . . [and] if the tenant fails to pay the entire amount ordered, the court shall . . . enter judgment for the landlord and enter an order of possession of the premises.")

Though she continues to live in the foreclosed property, the defendant has failed to fulfill her obligation to make her monthly note payment, regularly and on time, into court. She made four of the six payments due in 2002; only the first was timely. At the end of January 2003, she made two more payments.

> In Virginia, we have . . . approved the general rule that a party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory. A litigant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for the same cause of action, or in dealings in pais. This wise and salutary policy has been repeatedly followed. *Chesapeake & Ohio Ry. v. Rison*, 99 Va. 18, 37 S.E. 320; *Canada v. C. H. Beasley & Brothers*, 132 Va. 166, 111 S.E. 251, 252; *Arwood v. Hill's Adm'r*, 135 Va. 235, 117 S.E. 603; *Alexander v. Commonwealth*, 137 Va. 477, 120 S.E. 296; *Fitchett v. Parsons*, 142 Va. 163, 128 S.E. 457; *Title, etc., Bank v. Clifton Forge National Bank*, 149 Va. 168, 140 S.E. 272; *Nagle v. Syer*, 150 Va. 508, 143 S.E. 690; *Byrd v. Pennsylvania RR.*, 151 Va. 954, 961, 145 S.E. 722.
>
> Or, as some cases put it, "A [party] shall not be allowed to approbate and reprobate at the same time."

*Leech v. Beasley*, 203 Va. 955, 961-62, 128 S.E.2d 293 (1962). "No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate

— to invite error, as the defense admittedly did here, and then to take advantage of the situation created by his own wrong. *See Sullivan v. Commonwealth*, 157 Va. 867, 878, 161 S.E. 297, 300 (1931)." *Fisher v. Commonwealth*, 236 Va. 403, 417, 374 S.E.2d 46 (1988), *cert. denied*, 490 U.S. 1028, 104 L. Ed. 2d 201, 109 S. Ct. 1766 (1989), *writ of error denied sub nom. Fisher v. Murray*, 513 U.S. 1087, 130 L. Ed. 2d 646, 115 S. Ct. 745 (1995). "After . . . lulling the [plaintiff] into security by conduct of this sort, the [defendant] cannot now be permitted to change front to the injury of [plaintiff]." *Title Guarantee Trust & Sav. v. Clifton Forge National Bank, supra*, 149 Va. at 175. *See also Zebrowski v. Hanna*, 973 F.2d 1001 (1st Cir. 1992).

Having conceded that she could not maintain ownership and possession of the real estate without regularly paying the deed of trust note, having established a mechanism for paying the note into the registry of the court — and then having failed to honor her payment obligations — the defendant will not now be heard to say that she should be allowed to maintain her defense of the case. Furthermore, this action was removed from the General District Court, and "Actions or proceedings appealed or removed from district courts shall be tried according to the principles of law and equity, and when the same conflict the principles of equity shall prevail." Virginia Code § 16.1-114.1. A fundamental principle of equity is that one who seeks equity must do equity. *Adelman v. Conotti Corp.*, 215 Va. 782, 793, 213 S.E.2d 774 (1975).

The view I take of the case renders it unnecessary to consider the other questions raised by counsel in this case. The court denies each party's requests for attorney's fees.