## INTERNATIONAL BANKING CORPORATION v. IRVING NAT. BANK
(two cases).

(Circuit Court of Appeals, Second Circuit.   May 8, 1922.)

Nos. 204, 205.

1. **Banks and banking ⟜191—Conditions of letter of credit must be complied with.**

   The conditions, however onerous, of a letter of credit, whereby a bank authorizes one to draw on it, must be complied with, to render bank liable for refusal to accept a draft drawn pursuant thereto.

2. **Banks and banking ⟜191—Letter of credit construed according to ordinary rules.**

   In determining the conditions of a letter of credit, the ordinary rules governing the construction and interpretation of writings, and especially commercial contracts, are applied.

3. **Banks and banking ⟜191—Letter of credit held to require shipping documents accompanying draft to make certain statements as to goods shipped c. i. f.**

   A letter of credit *held* to require draft drawn pursuant thereto, or the accompanying shipping documents, to assert, not only that the goods shipped c. i. f. were silk of a certain number of pieces and size, but also made as per certain designs and having no more than 50 per cent. of its width taken up with stripes; so that, this not being done, the bank was not liable for refusal to accept draft.

In Error to the District Court of the United States for the Southern District of New York.

Two actions by the International Banking Corporation against the Irving National Bank.  Judgment for defendant, after trial with jury waived under Rev. St. § 649, being Comp. St. § 1587 (274 Fed. 122), and plaintiff brings error.  Affirmed.

The essential fact findings made by the trial judge are as follows:

November 7, 1919, Irving Trust Company duly issued to one Liberman a letter of credit as follows:

"We hereby authorize K. Kobayashi, Yokomaha, Japan, to draw on Irving Trust Company, New York, for account of Philip Liberman, New York, at four months after sight, for any sum or sums not exceeding in the aggregate thirty-two thousand five hundred dollars, U. S. currency, against complete negotiable set of shipping documents covering 500 pcs. Fuji silk as per sample No. 400 weight about 16mm. each piece 33"x50 yds, to be made as per our designs and total width of stripes not more than 50% of the material width. Price $65.00 U. S. gold per piece c. i. f. New York for shipment to New York. Marine insurance and also war risk insurance to be effected by shippers. Drafts under this credit are to be drawn in duplicate and negotiated on or before May 20, 1920, and to be enfaced, 'Against I. T. Co.'s L/C No. 2110 dated New York, November 7th, 1919,' and the amounts thereof to be written off on the back of this credit. The negotiating banker must send duplicate advice of such drawings promptly to Irving Trust Company, New York, accompanied by negotiable bills of lading (all, except one of the set issued), insurance certificates if the shipper insures, consular invoice and commercial invoice. Bills of lading are to be issued to the order of Irving Trust Company, New York, notify Philip Liberman, New York. All remaining documents, completing the sets originally issued, must be sent by negotiating bankers to Irving Trust Company, New York, and we hereby agree with the drawers, indorsers, and bona fide holders of drafts drawn under and in compliance with the terms of this credit that the same shall be duly accepted upon presentations and paid at maturity.                                        Irving Trust Company."

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

April 27, 1920, Kobayashi drew a draft pursuant to said letter of credit against a complete set of shipping documents, which draft in common form required Irving Trust Company to pay to the order of plaintiff a certain sum of money "for value received and place the same to the account of silk goods for account of Mr. Philip Liberman."

On the same day plaintiff duly acquired said draft and accompanying documents for value. The shipping documents referred to consisted of negotiable bills of lading, insurance certificates, and consular and commercial invoices, and said invoices stated that the goods covered thereby were "striped Fuji silk 33 in. ex. 50 yrd. quality as per your sample 400, weight sixteen (16) mome."

Said invoices also contained an enumeration of the cases of silk by number and reference to the patterns contained in each case, together with the quantity "in pieces" in each consignment. But no invoice or other shipping document contained in words or substance the statement that said silk was "made as per our designs and total width of stripes not more than 50% of the material width."

The Irving Trust Company is the same corporation as the defendant Irving National Bank.

The trial court held as matter of fact that no invoice or other shipping document presented to defendant with said draft contained "the description of the silk as set forth in said letter of credit"; wherefore, as a conclusion of law, the plaintiff had failed to perform all the terms and conditions of said letter of credit on its part to be performed, in that said documents above enumerated and presented by plaintiff to defendant "failed to conform to the terms and conditions of said letter of credit."

There were two drafts drawn, and payment refused, under the letter of credit in question; action was brought on each; there is no difference between the actions, except as to amounts and times. Defendant had judgment in both cases, and plaintiff thereupon brought these writs.

Shurman & Sterling, of New York City (Clifton P. Williamson, James A. Stevenson, Jr., and Edward W. Bourne, all of New York City, of counsel), for plaintiff in error.

Woodward, Dennis & Buhler, of New York City (Joseph S. Buhler and Arthur B. King, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). This litigation complements the matters discussed in American Steel Co. v. Irving Bank (C. C. A.) 266 Fed. 41, and Harper v. Hochstim (C. C. A.) 278 Fed. 102, opinion filed December 14, 1921. The facts at bar, considered with those of the cases cited, illustrate quite thoroughly a modern method of business, and some possible and important variants thereof.

Kobayashi evidently agreed to sell to Liberman certain silks c. i. f. New York. Therefore, as shown in the Harper Case, supra, Kobayashi agreed in performing his contract, not only to physically deliver the goods to a carrier, but to deliver certain documents constituting the evidence of title to the goods. As a part of the same business scheme, and undoubtedly as part of the consideration moving to Kobayashi, Liberman made with or procured from the Irving Bank a letter of credit in favor of Kobayashi. This transaction, however, as shown in the American Co. Case, supra, was an entirely separate, distinct, and independent contract. That credit letter established an obligation on the part of the bank to Kobayashi wholly distinct from

any obligation that the latter had to furnish to Liberman or for his account, both goods and documents.

But, in the making of this independent contract between the bank and Kobayashi, any particular terms, conditions, or agreements might be inserted, if consented to by the parties. If Kobayashi did not like the form of the credit offered to him, he was entirely at liberty to decline it; and this is true, though it be also true (as it certainly is) that Liberman, as the customer of the bank, could dictate, and probably did dictate, the terms of the letter of credit at bar. The bank, of course, had also a contract with Liberman; i. e., an agreement to issue and abide by such letter of credit as he approved and the bank agreed to give.

[1] The letter of credit might have taken the form shown in the American Co. Case, supra, where the promise of the bank to pay was conditioned solely upon the production with draft of certain specified documents, without descending into the particulars of any one of them. But there is no legal objection to the credit letter's requiring the shipping documents to declare on their face compliance with the commercial or manufacturing details of the underlying agreement between the recipient of the credit letter and the buyer of the goods, in this instance between Liberman and Kobayashi. The conditions may be onerous, but, whether light or heavy, they were agreed to, and must be complied with.

[2] Therefore no court can do more than examine the written agreement, and declare whether any given requirement is a condition precedent to recovery, whether any words or phrases are ambiguous, or whether any word or words have a trade meaning requiring evidence for their elucidation. Vide Vietor v. National, etc., Bank, 200 App. Div. 557, 193 N. Y. Supp. 868. In other words, we must apply the ordinary rules governing the construction and interpretation of writings and especially commercial contracts.

[3] In this case Kobayashi in effect agreed with defendant that any draft he drew against the credit at bar would, by itself or the accompanying documents, assert plainly and substantially that the goods shipped c. i. f. were silk, in so many pieces, each piece of such a size, made as per certain designs[1] and having no more than 50 per cent. of its width taken up with stripes.

About this there is nothing ambiguous; it is not pleaded, nor even suggested, that patterns or designs include stripes, nor is any trade usage relied on. Therefore we must take the writing according to the ordinary meaning of the ordinary words used; and, so read, it is plain that there was a total failure on the part of Kobayashi in preparing shipping documents to accompany draft, to show, certify, declare, or represent that the goods were in respect of stripes as described in the letter of credit.

This burden Kobayashi had undertaken; his failure therein was as patent to the plaintiff bank when it bought the draft and supporting

---

[1] The word "our" before "designs" in the letter of credit admittedly refers to Liberman's designs furnished to Kobayashi.

documents as it has ever since been; and the consequence of that failure was rightly measured below.

Judgment affirmed, with costs.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes