# Richmond.

## WESSEL, DUVAL & COMPANY v. CROZET COOPERAGE COMPANY.

### November 12, 1925.

1. SALES—*Mutuality—Provisions Releasing Sellers from Liability if from Causes Beyond their Control they Could not Perform—Case at Bar.*—In an action by sellers for breach of contract against buyers, it was argued that the contract of sale was void for want of mutuality, because it contained provisions releasing the sellers from liability if their inability to comply with its terms arose from causes beyond their control.

   *Held:* That this was a legitimate subject of contract, and having been agreed to must be complied with whether onerous or not.

2. APPEAL AND ERROR—*Action by Sellers for Breach of Contract of Sale—Defense of Want of Mutuality up for the First Time on Appeal—Inconsistent Position on Appeal.*—In an action by sellers against buyers for breach of contract of sale, a defense that the contract of sale was void for want of mutuality of obligation, not made in the trial court, cannot be set up for the first time on appeal. The contract was recognized as in effect and binding by both parties. The defendants ordered and paid for a part of the goods contracted for, and at the trial asked for and obtained instructions predicated upon the validity of the contract. They will not be permitted to shift their position and occupy an inconsistent attitude.

3. PAROL EVIDENCE—*Contract of Sale—Broker's Agreement to Dispose of Subject of Sale for Buyer.*—In an action by sellers against buyers for breach of a contract of sale, defendants attempted to prove that the broker who negotiated the sale, before the written contract was entered into, agreed to "handle" all of the subject of the sale that the defendants could not dispose of. The trial court excluded this testimony.

   *Held:* That the testimony was properly excluded under the parol evidence rule.

4. SALES—*Shipping Directions—Notice of Arrival of Vessel—Case at Bar.*—The contract of sale expressly gave the sellers the right to fill the order either "ex vessel" or "ex store." The contract stated: "Expected arrival: February, March 1921." It further provided that the buyer was to give shipping instructions after notice of time

of expected arrival, and that failure to give prompt shipping directions might be deemed a refusal to take the subject of the sale.   Defendants admitted receipt both of a letter and telegram dated March 1, from the broker who negotiated the sale, requesting shipping directions and the letter and telegram read together furnish abundant evidence that the sellers were ready to fill the entire order promptly, and only awaited shipping directions.

*Held:*   That no other notice is necessary of the readiness of the sellers to fulfill their contract, and that defendants, under the contract, on receipt of this notice, were obligated to promptly furnish shipping directions.

5.   SALES—*Action for Breach of Sale by Sellers—Repudiation of Contract by Buyer—Tender—Case at Bar.*—In the instant case, an action by sellers for breach of a contract of sale, the buyers in a letter to sellers did not object to the sufficiency of the notice that the sellers were ready to fill the whole contract, but repudiated their obligation to take more than sixty-five tons of the subject of the sale, whereas the contract was for 135 tons, and said that when they ordered out the sixty-five tons they notified the broker that they would not accept any more.

*Held:*   That if proof of tender of performance by the sellers was needed, it was waived by this repudiation by the buyers.   Moreover, the sellers, after the time for performance by the buyers had passed, again tendered performance.

6.   SALES—*Action for Breach of Sale by Sellers—Repudiation of Contract by Buyers—Case at Bar.*—In an action by sellers against buyers for breach of the contract of sale, it could not avail the defendants to say that their statement, during the life of the contract, that they "would not accept any more" was not a final repudiation of the contract, where the sellers were ready and willing to furnish the residue of the subject of the sale during the life of the contract, and even after its termination offered to perform.

7.   SALES—*Action for Breach of Contract by Sellers—Failure to Give Shipping Directions—Option of Sellers—Case at Bar.*—A contract for sale of nitrate provided that "failure to give prompt shipping instructions may, at seller's option, be deemed refusal to take nitrate." The sellers had the right to rely upon this provision of the contract, but if they were more indulgent, and extended the time for giving shipping directions, and continued ready, able and willing to perform, and offered to ship the nitrate after the expiration of the contract, that was nothing of which defendants could complain.

8.   SALES—*Action for Breach of Contract by Sellers—Damages—Market Value.*—In an action by sellers for breach of a contract for sale of nitrate, the sellers showed that the price of nitrate was declining throughout the month during which, under the contract, the nitrate

was to be delivered to the buyers. The buyers had the right to give shipping directions at any time during the month, and if they failed to give them and breached their contract at the end of the month, the damages of the plaintiff would have been greater than if they had breached the contract at the beginning of the month. The sellers proved by undisputed testimony what was the average price of nitrate during the month.

*Held:* That the buyers could not complain of this method of determining the damages as it was plainly for their benefit.

Error to a judgment of the Circuit Court of Albemarle county, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Baird, White & Lanning* and *Gilmer & Graves,* for the plaintiff in error.

*Allen, Walsh & Michie* and *Lemuel F. Smith,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

When this case was formerly before this court a judgment by default in favor of the plaintiff in error was set aside, and the case was "remanded to the court below to be there reinstated in the same condition in which it was at the time the judgment was rendered." The merits of the case were not involved or passed on. *Wessel* v. *Bargamin,* 137 Va. 701, 120 S. E. 287. In the instant case, the merits of the controversy are involved.

The action was brought to recover the difference between the contract price and the market price of

one hundred and thirty-five tons of nitrate of soda, sold by the plaintiffs to the defendants. There was a verdict and judgment in favor of the defendants, and the plaintiffs assign error.

The contract was negotiated by a broker, W. A. Keefe Co., Inc., and was in writing signed by Crozet Cooperage Company and "W. A. Keefe, Broker." It was accepted and its fulfilment undertaken by Wessel, Duval & Co., though not signed by them. By the terms of the contract, the Crozet Cooperage Company purchased of Wessel, Duval & Co. 220 long tons of nitrate of soda at $3.10 per ton. The contract is dated November 20, 1920, and was for the purchase of nitrate of soda which was expected to arrive at the port of Norfolk, Virginia, in February and March, 1921, by steamers or equivalent sailers, from the west coast of South America. The terms of payment were "net cash against sight draft with bill of lading attached." The contract contained a number of specific provisions exempting the sellers from liability arising from causes incident to shipments of this nature, and concluded with this general provision:

"Sellers shall in no event be held responsible for any contingency beyond their control, whether herein specifically provided for or not.

"War risk insurance for account of buyers."

The contract also contained this provision:

"Nitrate to be taken by buyer at port of arrival or place when ready for delivery, ex vessel and or ex store as above, in single bags in customary good order. Buyer to give shipping instructions promptly after notice of time of expected arrival. Failure to give prompt shipping instructions may, at sellers' option, be deemed refusal to take the nitrate. Wharfage and transfer charges, if any, at port of arrival shall be for account of buyer."

[1, 2] It was argued before us that the contract was void for want of mutuality of obligation, but we find no such difficulty about the contract. It is true that it contained many provisions releasing the sellers from liability if their inability to comply with its terms arose from causes beyond their control, but that was a legitimate subject of contract, and having been agreed to must be complied with whether onerous or not. *International Banking Corporation* v. *Irving National Bank* (C. C. A.), 283 Fed. 105. But aside from this, no such defense was made in the trial court and cannot now be set up in this court. The contract was recognized as in effect and binding by both parties. The defendants ordered and paid for a part of the goods contracted for, and at the trial asked for and obtained instructions predicated upon the validity of the contract. They will not be permitted to shift their position and occupy an inconsistent attitude. *Ches. & O. R. Co.* v. *Rison*, 99 Va. 18, 37 S. E. 320; *Alexander* v. *Commonwealth*, 137 Va. 477, 120 S. E. 296.

[3, 4] The defendants apparently expected to prove that Keefe, the broker, before the written contract was entered into, agreed to "handle" all the nitrate the defendants could not dispose of, but this testimony was properly excluded by the trial court, under the parol evidence rule. They then fell back upon the defense that they were in no default in failing to give shipping directions, because they were under no obligations to give such directions until after the plaintiffs had given them notice of the time of the expected arrival of the ship or ships bringing the nitrate, and that no such notice had ever been given.

The contract expressly gave the sellers the right to fill the order either "ex vessel" or "ex store" at their option. It could make no difference to the buyers from

which source the nitrate was taken, except a small difference in the expense of handling. The contract stated: "Expected arrival: February, March 1921." On March 1, 1921, the broker who had negotiated the sale wired the defendants: "Mail shipping instructions on nitrate desired for immediate use will go forward next day." On the same date, March 1, 1921, he wrote them as follows:

"I wired you this morning requesting that you forward shipping instructions on what nitrate you want delivered this month, and I am confident same will be rolling two or three days after same is received. Please do not have any concern about getting your nitrate promptly as the importers are right up to date in their deliveries."

The defendants admit the prompt receipt of both the letter and the telegram. The two must be read together, and, when so read, they furnish abundant evidence that the sellers were ready to fill the entire order promptly, and only awaited shipping directions. February and March were the months for delivery. The letter was dated March 1, and the request was for "shipping instructions on what nitrate you want delivered this month," and the further assurance was added: "Please do not have any concern about getting your nitrate promptly, as the importers are right up to date in their deliveries." No other notice was necessary of the readiness of the shippers to fulfill their contract. All that was needed was shipping instructions from the buyers.

Under the foregoing request the buyers ordered and paid for sixty-five tons, leaving uncalled for one hundred and thirty-five tons.

On April 4, 1921, the sellers wrote the buyers as follows:

"Referring to your contract of November 20, 1920, our No. 3265, against which you have sent us shipping instructions for sixty-five tons nitrate of soda of total due you of 200 tons, we wish to ask if you are not now in position to send us your shipping instructions for the 135 tons still due you.

"We have been holding the nitrate in store at Norfolk since early last month, when you informed our agents, the National Stevedoring Company, you were able to furnish shipping instructions at that time for only sixty-five tons."

To which the buyers replied as follows:

"We have yours of the 4th with reference to nitrate of soda. We notified your broker, Mr. Keefe, when we ordered out the sixty-five tons that we had sold no more than that quantity, could not sell any more than that, and in accordance with our understanding previous to ordering we would not accept any more.

"The handling charges on these three cars were so unusually excessive, and so much greater than charged by the Nitrate Agencies Company, that we lost considerable money. Had we known what to expect we would not have tried to handle nitrate at all this season. The charges at Norfolk seemed to us excessive.

"We bought none elsewhere, cannot use any more, and could not pay for it in any event. We are advising Mr. Keefe of your letter to us concerning the remainder of shipment, which he agreed to handle.

"This whole section has had its apple and peach crop killed and with us it is our entire business.

"We trust that another year we will be able to get fruit growers to take hold of nitrate and use it.

"We cannot handle this balance; we have no money to pay for it, and nobody to take it."

[5] It will be observed from this reply that the buyers

did not object to the sufficiency of the notice that the sellers were ready to fill the whole contract, but repudiated their obligation to take more than sixty-five tons, and say that when they ordered out the sixty-five tons they notified the broker that "we would not accept any more." If any further proof of tender of performance by the sellers was needed, it was waived by this repudiation by the buyers. Moreover, after time for performance by the buyers had passed, the sellers, by the letter of April 4, again tendered performance on their part, and the buyers refused, saying: "We cannot handle this balance; have no money to pay for it, and nobody to take it." The sellers have, at all times, been ready, able and willing to perform the contract on their part, but the buyers have failed and refused to meet the obligation imposed upon them.

[6, 7] The plaintiffs' right of recovery is not founded on any estoppel growing out of the letter of April 8, written after the time for delivery had passed, but on the repudiation of the contract and refusal to accept performance when the sixty-five tons were ordered out. It is unnecessary, therefore, to consider the subject of estoppel by the letter of April 8, so much discussed in the briefs. Nor would it avail the defendants to say that their statement, during the life of the contract, that they "would not accept any more" was not a final repudiation of the contract, as the plaintiffs were ready and willing to furnish the residue of the nitrate during the life of the contract, and even after its termination, by their letter of April 6, offered to perform. The contract provided that "failure to give prompt shipping instructions may, at seller's option, be deemed refusal to take nitrate." The sellers had the right to rely upon this provision of the contract, but if they were more indulgent, and extended the

time for giving shipping directions, and continued ready, able and willing to perform, and offered to ship the nitrate, as late as April 4, that is not anything of which the defendants can complain. The fact is, that defendants intended their statement that they "would not accept any more" as a final denial of their obligation to take any more.

[8] The buyers also insist that there is no evidence of the market value of nitrate on any given date in the month of March, 1921, and hence the jury could not, from the evidence, fix the market price at the time and place of delivery. The evidence is clear and explicit that the price of nitrate was declining troughout the month and was less at the end than at the beginning of the month. The buyers had the right to give shipping directions at any time during the month, and if they failed to give them and breached their contract at the end of the month, the damages of the plaintiff would have been greater than if they had breached the contract at the beginning of the month. The sellers proved by undisputed testimony what was the average price during the month. Of this the buyers cannot complain. It was plainly for their benefit.

The questions we have discussed were raised by the ruling of the trial court on instructions to which exception was duly taken. It is unnecessary to discuss the instructions in detail. We have preferred to discuss the controlling principles of the case.

It is manifest from what has been said that the judgment of the trial court must be reversed. It seems equally plain that the plaintiffs are entitled to a judgment for their claim. The judgment of the trial court will, therefore, be reversed, the verdict of the jury set aside, and a judgment will be entered in this court in favor of the plaintiffs in error against the defendants in

error for $1,545.26, with interest thereon at six per cent per annum from April 1, 1921, until payment, and for their costs in this court and also in the circuit court.

*Reversed.*