# Richmond

THOMAS D. LEECH, AN INFANT, ETC. v. DUANE BEASLEY, ET AL.

December 3, 1962.

Record No. 5482.

Present, All the Justices.

*William Rosenberger, Jr.* (*Basil G. Watkins; J. Murrell Daniel,* on brief), for the plaintiff in error.

*E. Marshall Frost* and *Paul Whitehead* (*J. Frank Shepherd,* on brief), for the defendants in error.

CARRICO, J., delivered the opinion of the court.

This litigation arose out of an accident involving only one automobile, owned by Corinne M. Johnson, in which four young men were riding. In the crash Mrs. Johnson's son, Carroll, was killed, and Thomas Leech, Duane Beasley and Thomas R. Burley were injured.

Leech, an infant, by his father and next friend, filed a motion for judgment seeking to recover damages for his personal injuries against Beasley, also an infant, and the Johnson estate. This motion alleged that Beasley, as agent for Johnson, was the operator of the automobile at the time of the accident; that he, Leech, was a guest in the automobile, and that the accident occurred as the result of Beasley's gross negligence. This motion for judgment was filed for Leech by Basil G. Watkins and J. Murrell Daniel, as attorneys.

Beasley, through E. Marshall Frost, his attorney, filed grounds of defense to the Leech action. He also filed, by his father and next friend, through Paul Whitehead, his attorney, a counter-claim against Leech for damages for his personal injuries. In this counter action, Beasley alleged that Leech was the operator of the automobile; that he, Beasley, was a guest therein, and that the accident resulted from the gross negligence of Leech.

The Johnson estate, through Mr. Frost, its attorney, filed grounds of defense to the Leech motion for judgment. In addition, through Mr. Whitehead, as attorney, it filed a counter-claim against Leech for damages for Johnson's wrongful death. This counter-claim alleged

that Leech was the operator of the automobile at the time of the fatal mishap; that Johnson was a passenger therein, and that Leech was liable to the estate for his ordinary negligence.

Leech, through William Rosenberger, Jr., as attorney, filed a response to each of the counter-claims.

Mr. Frost was appointed guardian *ad litem* to defend Beasley in the action brought by Leech, and Mr. Rosenberger was appointed guardian *ad litem* to defend Leech with relation to the counter-claims filed against him.

In the trial of the case, the court granted the motion of the Johnson estate to strike Leech's evidence and enter summary judgment in its favor on Leech's motion for judgment. That ruling is not before us on this appeal.

All of the remaining claims were submitted to the same jury. The finding was adverse to Leech on the original claim filed by him against Beasley. Beasley was awarded $8,000.00 in damages and the Johnson estate $15,000.00, on their counter-claims against Leech. The latter's motion to set the verdicts aside was overruled, and final judgments were rendered in accordance with the findings of the jury. We granted Leech a writ of error.

The evidence, in the record before us, is in serious conflict. When we view it, as we must, in the light most favorable to the prevailing parties, it shows that the four principals in this tragic escapade all worked at the same business establishment in Lynchburg. While at work on October 8, 1960, they planned a trip to Roanoke for that evening.

It was arranged that Beasley, according to his testimony, should drive the Johnson automobile, a 1960 Chevrolet, because, "they were going to have a good time and were going to drink 2 or 3 cans of beer and wanted me to drive because I didn't drink."

With Beasley driving, they left Lynchburg at approximately 7:30 p.m. Johnson, who was 21, purchased six cans of beer after they had left the city and he, Leech and Beasley shared equally in its consumption. Later, in Roanoke, Johnson brought two more cans of beer, which he consumed alone.

Beasley drove the automobile to Roanoke, around that city, and on the return trip as far as Whitey's Truck Stop, a filling station and restaurant located 11 miles east of Roanoke on Route 460 and approximately 8 miles west of the accident scene. The evidence does

not indicate that Beasley's operation of the automobile, during this period, was other than lawful and proper.

The conflict as to who was the operator of the vehicle at the time of the accident commences with the happenings at Whitey's Truck Stop. Beasley drove the automobile, on the return trip, into this establishment and parked it in front of the gasoline pumps.

John G. Wood, the attendant on duty at the service station, was called as a witness by Leech. He testified that he observed the Johnson vehicle enter the premises at approximately 11 p.m. and stop beside the gasoline pumps. He was informed by the occupants that they did not want to purchase gasoline, but desired to use the rest room. He could not identify the person who drove the vehicle into the station, but said that Beasley was driving it when it left and, "the tires were crying a little and skidding."

Neither Leech nor Beasley, because of their injuries, had any recollection concerning the identity of the driver of the vehicle, either when it left the filling station or when it crashed.

The testimony of Burley, the remaining survivor of the accident, presents quite a different picture. He remembered, in detail, the events of the entire evening. He was called as an adverse witness by Leech to prove the manner in which the accident happened, but was not then asked any questions concerning the identity of the driver. On cross-examination, however, he was interrogated about such identity.

Burley's version of the incidents at Whitey's is at variance with that given by Wood. Burley's statement, which the jury accepted, as it had the right to do, was that when Beasley drove the vehicle into the service station and parked, all four of the occupants then emerged and visited the rest room; that when they returned to the front of the filling station they were informed by Wood that if they did not want to purchase gasoline the automobile should be moved from in front of the gasoline pumps; that Johnson entered the filling station and purchased some ice-cream; that Beasley, Leech and he, Burley, then got in the vehicle and Beasley drove it way from the pumps to a point in front of the restaurant; that when Johnson came to the car Leech asked if he could drive and Johnson at first refused and then, upon urging by Leech, assented; that Leech was driving when the vehicle left Whitey's and was driving at the time of the accident.

The accident occurred on Route 460, eight or nine miles west of Bedford, at approximately 11:35 p.m. Route 460, at that location, is

a dual lane highway, the two westbound lanes being widely separated from, and not in sight of, the two eastbound lanes.

The eastbound lanes form a sweeping "S" curve, the first portion thereof bearing to the right and the second to the left. Reflecting highway markers were erected, at the time of the accident, warning of the presence of the curve and indicating a maximum safe speed of 50 miles per hour.

According to Burley, the automobile entered the first portion of the curve at 75 miles per hour. Its speed was then accelerated so that at the time of the accident it was going "80 or 85 or 90" miles per hour.

The vehicle failed to make the portion of the curve bearing to the left, ran off the highway to its right, travelled 250 feet, meanwhile crossing over an intersecting secondary highway and knocking down a metal highway sign, proceeded another 110 feet and came to rest 62 feet from the edge of Route 460, at the bottom of a 50 foot embankment, pointed opposite to the direction in which it had been travelling.

The state trooper who investigated the accident said that, in its course, the vehicle "jumped or flipped over completely;" "either went head over or just bounced, just completely bounced and made a path completely through a field covered with honeysuckle;" and, "struck a tree approximately 14 feet up in the air. . . . and then came to rest on its wheels."

Johnson's body was found 30 to 40 feet west of the vehicle, or in the direction from which it had come. Leech was found, unconscious, 30 to 40 feet beyond where the car came to rest. Beasley and Burley had somehow made their way to the top of the embankment by the time the police officers arrived.

The automobile was completely demolished. It is difficult to view the photographic exhibits of the wrecked vehicle without contemplating the terriffic force with which it must have crashed and speculating as to how any of the occupants escaped alive.

This appeal presents the following questions for determination:

1. Did the court err in refusing Leech a trial of his claim against Beasley and the Johnson estate separate from a trial of the counterclaims against him?

2. Was the evidence sufficient to prove the existence of gross negligence?

3. Did the court err in granting certain instructions for Beasley and the Johnson estate and in refusing others for Leech?

The issue as to separate trials, which is the only serious question in the case, arose in this manner:

Leech, through Watkins and Daniel, the attorneys who filed his motion for judgment, about five months before the trial was held, filed a written motion asking that his original action against Beasley and the Johnson estate be tried separately from the causes of action asserted in the counter-claims filed against him.

The court, after argument, overruled the motion, over Leech's objections, and ordered that, "all of the issues made on the action of the plaintiff against the defendants and on the counter-claims of the defendants against the plaintiff be tried before the same jury on the same day in this Court."

On the morning of trial, this motion was renewed by Leech and was again, over his objections, overruled.

Leech contends that he was prejudiced by being required to try his claim at the same time the claims against him were tried because:

1. His claim and the Beasley claim against him were based upon gross negligence, whereas the Johnson claim against him was based on ordinary negligence; that, thus, there were different issues and different burdens of proof involved, which confused the jury.

2. That he was prejudiced in defending the counter-claims because Watkins and Daniel conceded, in the trial of the case, that the accident occurred as the result of gross negligence; that since he was an infant they did not have the right to make such a concession.

3. That he was put in the position of having to introduce and rely on the testimony showing the existence of gross negligence to prove his claim for damages, then being unable to discredit such testimony in defending the counter-claims.

■ We are of the opinion that Leech's motions for separate trials were properly overruled.

Rule 3:8, Rules of Court, permits the filing of a counter-claim by a defendant against whom a motion for judgment has been brought. That Rule also provides that, "[T]he court in its discretion may order a separate trial of any cause of action asserted in a counter-claim."

When a trial judge has passed upon a motion for a separate trial, and this issue comes before us, we will not disturb the ruling unless

it plainly appears that the discretion, which the rule grants, has been abused. *Clark* v. *Kimnach*, 198 Va. 737, 744, 745, 96 S. E. 2d 780.

The issues presented by the respective claims were not difficult, unusual or involved, or such as to confuse the jury. Needless delay, expense and consumption of the court's time would have been involved in separate trials. It is the policy of the law to avoid this wherever possible.

The fact that the Johnson claim was based on ordinary negligence, while the other two were based on gross negligence, was not sufficient to dictate separate trials. The jury was fully instructed as to the type of negligence and the elements thereof necessary to be shown in, and the burden of proof relating to, each claim. It is impossible to conceive that the jury could have misinterpreted or misapplied the instructions, in view of the evidence, and concluded that gross negligence existed in Beasley's claim against Leech, simply because it found that ordinary negligence existed in the Johnson claim.

There is no merit to Leech's contention that the attorneys representing him on his original claim made a concession as to gross negligence which they could not make because he was an infant. What the attorneys told the court and the jury was not a concession, but merely a reassertion of what Leech himself had set forth in his motion for judgment, that is, that the accident resulted from Beasley's gross negligence in the operation of the automobile. This they were bound to do. On no other basis could Leech have sustained his claim.

Nor is there any merit to Leech's contention that he was prejudiced by the joint trial because he could not refute, in defending the counter-claims, the testimony introduced by him and upon which he relied to prove his original claim.

What Leech seeks, in this respect, is the right to say, in successive trials of his claim and the counter-claims, "If Beasley was driving the automobile, then the accident resulted from the gross negligence of the driver, but if I was driving, it did not result from the gross negligence of the driver."

No party, under the law, has this right. What Mr. Justice Spratley said, in a strikingly similar situation, in *Burch* v. *Grace Street Bldg. Corp.*, 168 Va. 329, 340, 191 S. E. 672, is applicable here:

"In Virginia, we have . . . . approved the general rule that a party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory. A liti-

gant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for the same cause of action, or in dealings *in pais*. This wise and salutary policy has been repeatedly followed. *Chesapeake & Ohio Railway Company v. Rison*, 99 Va. 18, 37 S. E. 320; *Canada v. C. H. Beasley & Brothers*, 132 Va. 166, 111 S. E. 251, 252; *Arwood v. Hill's Adm'r*, 135 Va. 235, 117 S. E. 603; *Alexander v. Commonwealth*, 137 Va. 477, 120 S. E. 296; *Fitchett v. Parsons*, 142 Va. 163, 128 S. E. 457; *Title, etc., Bank v. Clifton Forge National Bank*, 149 Va. 168, 140 S. E. 272; *Nagle v. Syer*, 150 Va. 508, 143 S. E. 690; *Byrd v. Pennsylvania Railroad Company*, 151 Va. 954, 961, 145 S. E. 722."

Or, as some cases put it, "A man shall not be allowed to approbate and reprobate at the same time."

Leech, in his motion for judgment, not only made a general allegation of gross negligence, but spelled out in detail the facts upon which he based those allegations. He alleged that the automobile was operated without proper control, without a proper lookout, at a dangerous and unlawful rate of speed, that it was driven into sign posts and off the highway. All of these facts were proved by Leech at the trial.

Leech was bound by the allegations of his motion for judgment, and his evidence in support thereof, that the accident occurred as the result of gross negligence in the operation of the automobile. He could not retreat from this position, either in relation to his claim or to the counter-claims.

There was only one real issue in the case—the identity of the driver of the automobile. Leech's interest on his claim and on the counter-claims was, on this issue, the same—to prove that Beasley was the operator. In the joint trial he had a full, complete and effective opportunity to prove this crucial point. That he failed is of no concern in the issue before us.

The object of the trial of any law case is the discovery of the truth. When the trial is fairly and properly conducted and this object is attained the ends of justice have been met. That is all that Leech was entitled to expect or to receive, either in separate trials or in a joint trial. When the evidence and the procedural and tactical maneuvering unfold in the record before us, it is clear that the only way this object of the law could be insured was by a joint trial.

This being true, there was no prejudice to Leech in refusing to

grant separate trials, and no abuse of discretion on the part of the trial judge in so ruling.

■ We now turn to Leech's contention that the evidence was insufficient to prove gross negligence.

At the outset, what has already been said concerning Leech's position with respect to his own pleadings and evidence is applicable here. As has been noted, he alleged in his motion for judgment and introduced evidence to prove that the accident resulted from gross negligence. True, he said it was Beasley who was grossly negligent. But in the face of his own allegations and proof as to how the accident happened, he ought not now to be heard to complain about the sufficiency of his own evidence merely because the jury believed that he, and not Beasley, was the guilty party.

Nonetheless, a comment concerning the evidence is in order, so that this contention may be firmly laid to rest.

This case is unlike those which Leech has cited, which need not be enumerated here, where recovery has been denied because it could not be determined how or why an accident occurred. Here, the jury could point directly to how and why this accident took place. Under the evidence presented to it, the jury could have found that Leech, with an utter lack of a sense of caution, entered a dangerous curve, heedless of the warnings displayed, at 75 miles per hour and then, while still in the curve, accelerated the speed of the vehicle to 80 or 85 or 90 miles per hour and, as a result thereof, was unable to control the vehicle and to complete the curve, thus causing it to run off the road and crash.

Leech offered, and the court granted, an instruction which contained an often quoted definition of gross negligence. It said that gross negligence is, "negligent conduct by a person which shows an utter disregard of prudence amounting to complete neglect for the safety of another."

The jury was justified in concluding that Leech's conduct met the test of his own definition. In such a situation the trial judge could not, and we will not, disturb the verdict because of an alleged insufficiency of evidence.

■ Leech's final contention is that the jury was improperly instructed. He says that the court erred in granting instruction B, at the behest of Beasley, and B-2, at the request of the Johnson estate.

These instructions need not be set out in full. Instruction B defined gross negligence, as related to the Beasley claim, and B-2 contained

a definition of ordinary negligence, as related to the Johnson claim. These instructions were proper statements of the law, were amply supported by the evidence, and it was not error to grant them.

Leech offered, through Mr. Rosenberger, and the court refused, instructions C-4, C-5 and C-6. These instructions would have told the jury that if the accident occurred as the result of causes, stated in C-4 generally and in the others specifically, for which the driver would not be responsible, recovery should be denied.

These instructions were properly refused. The general theory advanced in instruction C-4 was fully covered in other instructions which were granted. The specific theories advanced in instructions C-5 and C-6 were not supported by the evidence, and would have permitted the jury to engage in speculation and conjecture.

After the court had acted upon instructions and after final arguments were made, Leech, through Mr. Rosenberger, offered, and the court refused, instruction C-11. This instruction stated that if the identity of the driver had not been proved no verdict for damages should be returned.

This instruction was properly refused. Instruction C-8, offered by Leech, and C-9, offered by Beasley, were both granted by the court. These latter instructions fully informed the jury on the theory set forth in the refused instruction. Leech was not entitled to have the jury instructed twice on the same subject.

The verdicts of the jury were supported by the evidence and were reached in a fair and impartial trial. They have been given the approval of the trial judge. They will not be disturbed here. Accordingly, the judgments are

*Affirmed.*