## CIRCUIT COURT OF FAIRFAX COUNTY

Questech, Inc.

v.

7600 Limited Partnership

September 22, 1994

Case No. (Law) 130521

BY JUDGE ARTHUR B. VIEREGG, JR.

This case involves a lease dispute between a landlord, the defendant, 7600 Limited Partnership ("Partnership"), and its tenant, the plaintiff, Questech, Inc. On June 8, 1994, this Court heard oral argument with respect to the parties' cross-motions for summary judgment. After considering the pleadings filed in this case, the cross-motions for summary judgment, the lengthy briefs submitted in support of the motions, and the arguments of counsel, this Court is prepared to rule on the parties' cross-motions for summary judgment.

### I. Facts

It is not necessary to set forth all of the facts presented by the parties. Accordingly, only those deemed germane to this decision will be recited in the numbered paragraphs which follow.

1. At all times relevant to this case, the Partnership owned two virtually identical, adjacent office buildings in the Tysons Corner area of Fairfax County, Virginia ("7600 A" and "7600 B").

2. On January 22, 1988, the Partnership leased four floors in 7600 A to Questech ("Lease").

3. On December 31, 1989, the parties negotiated an amendment to the Questech Lease, pursuant to which Questech relinquished two of the four floors in 4600 A.

4. In partial consideration for its reduced lease obligations, Questech agreed, *inter alia*, to pay the Partnership one-half of the royalties received

from a Questech patent pursuant to a Research Agreement dated October 24, 1984 ("Royalty Agreement").

5. In 1991, Questech subleased portions of its remaining space in 7600 A ("First Sublease") to Science Applications International Corporation ("SAIC"); and the Partnership leased space in 7600 B to SAIC.

6. In April 1992, Questech and SAIC reached an agreement for SAIC to sublease additional Questech space in 7600 A ("Second Sublease"). This sublease was not immediately executed, however, and in fact never was executed.

7. Pursuant to the terms of the Second Sublease, Questech was obligated to obtain the Partnership's consent to the sublease; and pursuant to the Lease, if Questech was not in default, the Partnership agreed not to unreasonably withhold or delay consent. Lease, para. 19.

8. In early 1992, an attorney for the Partnership requested that Questech provide information related to royalties received by Questech pursuant to the Royalty Agreement.

9. Although the Partnership might have obtained the requested royalty information from Form 10-K's filed with the United States Securities and Exchange Commission, Questech failed to honor the Partnership's requests for the information.

10. On October 2, 1992, Questech filed an action in this Court seeking a declaration that the Lease violated the Virginia Statute of Conveyances and that Questech's obligations pursuant to the Lease were either void or unenforceable by the Partnership after the five-year anniversary of the Lease ("Statute of Conveyances Suit").

11. In early October, 1992, SAIC engaged in negotiations with Questech to sublease additional office space in 7600 A; and with the Partnership to lease additional office space in 7600 B.

12. On October 20, 1992, Questech and SAIC executed a second sublease pursuant to which SAIC agreed to sublease additional Questech office space in 7600 A ("Second Sublease").

13. On October 20, 1992, when requested to consent to the Second Sublease, the Partnership refused. It based its refusal upon (i) Questech's initiation of the statute of conveyances suit challenging the enforceability of the Questech Lease for periods covered by the Second Sublease, and (ii) Questech's failure to provide the requested royalty information.

14. On November 11, 1992, the Partnership notified Questech that it would reopen negotiations with SAIC to lease office space in 7600 B.

15. Because the Partnership would not consent to the Second Sublease, the Second Sublease was never consummated by Questech and SAIC.

## II. The Parties' Pleadings

On March 10, 1994, Questech initiated this action by filing a four-count motion for judgment. In Counts I through III, Questech seeks damages on account of the Partnership's refusal to consent to the Second Sublease. In Count I, Questech contends that the Partnership violated the Questech Lease. Counts II and III contain alternative pleadings. In Count II, Questech contends that if the Second Sublease is deemed a contract (despite the unfulfilled condition of the Partnership's consent to the Second Sublease), that the Partnership interfered with Questech's contractual relationship with SAIC established by the Second Sublease. Alternatively, in Count III, Questech contends that if the Second Sublease is not deemed a contract, that the Partnership interfered with Questech's prospective business advantages pursuant to the Second Sublease which had become a binding agreement. In Count IV, Questech raises an unrelated cause of action. It seeks declaratory relief based upon Paragraph 19 of the Lease, arguing that by virtue of the First Sublease which was approved by the Partnership, the Partnership discharged Questech from liability related to the space subleased pursuant to the First Sublease.

On April 5, 1994, the Partnership filed its grounds of defense and certain affirmative defenses, including estoppel, waiver, and privilege. The parties' cross-summary judgment motions followed.

## III. Questech's Motion for Summary Judgment

In Count I of its Motion for Judgment, Questech alleges that the Partnership's unreasonable refusal to consent to the Second Sublease constituted a breach of the Lease.

Virginia apparently has not addressed the issue of what grounds constitute a reasonable basis for a landlord to refuse to consent to its tenant's sublease. Questech refers this Court to a respectable body of law from other jurisdictions holding that:

> The purpose of the consent clause is protection of the landlord in
> its ownership and operation of the particular property, not pro-
> tection of the landlord's general economic condition.

*1010 Potomac Assoc. v. Grocery Manufacturers of Am., Inc.*, 485 A.2d 199, 210 (D.C. 1984); *Kreiger v. Helmsley-Spear, Inc.*, 302 A.2d 129, 130 (N.J. 1973).

Based upon these authorities, Questech maintains that the Partnership's grounds for refusing to consent to the Second Sublease — Questech's lawsuit challenging the enforceability of the Questech Lease beyond five years and Questech's failure to furnish royalty information — serve to advance the Partnership's general economic interests but not the protection of the Partnership's interests in 7600 A. Questech therefore argues that the Partnership wrongfully withheld its consent to the Second Sublease and thereby breached Paragraph 19 of the Lease.

Finding that the Partnership's refusal to consent to the Second Sublease was justified by Questech's prosecution of a suit to have the Lease invalidated, the Court need not consider the second question of whether or not Questech's failure to provide royalty information constituted appropriate grounds for the Partnership to withhold its consent to the Second Sublease.

Questech argues that the Partnership's business interests in 7600 A could not have been affected by its lawsuit challenging the validity of the Lease. Questech maintains that had its suit failed — as it ultimately did — the Partnership would have enjoyed the benefits accruing to it under the Lease, which interests would have been further advanced by the presence of a solvent subtenant. Questech alternatively maintains that had the Lease been declared invalid, the Second Sublease — as a matter of law — necessarily would have been unenforceable. This argument, however, focuses only upon legal precepts and not the practicalities of the situation. Had the lease been invalidated, the Partnership would have been faced with the task of ridding itself of a subtenant with whom it was not in privity. Such a situation potentially increased the practical business problems facing the Partnership with respect to its investment in 7600 A, a wholly appropriate reason for rejecting the Second Sublease.

For the foregoing reasons, Questech's motion for summary judgment must be denied.[1]

---

[1] In support of its motion for summary judgment, Questech made a number of other arguments based upon the contention that the Partnership's refusal to consent to the Second Sublease was motivated by the Partnership's desire to gain a competitive advantage over Questech *vis-a-vis* leasing space to SAIC. Clearly, such arguments necessarily implicate disputed facts and may not be disposed of by summary judgment.

## IV. The Partnership's Cross-Motion for Summary Judgment

### A. Counts I, II, and III

The Partnership contends that it is entitled to a summary dismissal of Counts I through III of Questech's motion for judgment. Each of these counts is based upon the premise that even during the pendency of its Statute of Conveyances Suit in which it maintained that the Lease was void, Questech had a right to sublease its office space in accordance with the terms of that Lease. The Partnership, however, contends that because these positions are inconsistent with one another, Questech is estopped and barred from asserting the cause of action upon which Counts I through III are based.

In support of its estoppel argument, the Partnership initially relies upon the following principle announced in *Leech v. Beasley*, 203 Va. 955, 961-62 (1962):

> A litigant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for the same cause of action, or in dealings in pais. This wise and salutary policy has been repeatedly followed.

Because the facts in *Leech* are distinguishable from those before this Court, the Partnership relies more heavily on the more analogous Virginia Supreme Court decision, *Nagle v. Syer*, 150 Va. 508 (1928), as support for the principle enunciated in *Leech* that taking successive inconsistent positions based on the same set of facts will bar a litigant from relying on the second position in litigation. Thus, the Partnership argues that since Questech had initially contended that the Lease was unenforceable in the Statute of Conveyances Suit, it is barred now from maintaining that the Partnership breached the Lease while Questech was challenging the Lease's validity.

The facts in *Nagle* may be summarized as follows. The case revolved around property on which a store was constructed. The owner of the property leased the store to a tenant. Later, he conveyed the property subject to the lease to secure a loan. After the recordation of the deed of trust, the property owner and the tenant terminated their lease (which was superior to the deed of trust) in favor of one with different lease terms (which were subordinate to the rights of the lender pursuant to the deed of trust). The loan thereafter fell in default, and the lender foreclosed. The plaintiff in *Nagle*, Syer, bought the property at the foreclosure sale.

After buying the property at the foreclosure sale, Syer brought suit against the tenant and sought to enforce the terms of the first lease entered into by the former owner of the property with the tenant before the recordation of that deed of trust. The tenant prevailed. In that suit, Syer unsuccessfully contended that the prior lease was a subsisting obligation of the tenant. Syer then filed a second suit seeking to enforce the later lease. The Court held that having contended in the first suit that the first lease was enforceable and, by implication, that the second lease was not enforceable against the tenant, Syer was estopped from seeking to enforce the second lease in the second suit. In affirming the trial court, the Supreme Court of Virginia declared:

> Syer not only had the right of election of remedies but the right to elect whether or not he would admit the validity of the [second lease] and recognize the Nagles to be his tenants thereunder. Having exercised these rights by suing them upon the [first lease] and declaring the [second lease] to be null and void and refusing to recognize the Nagles as tenants thereunder, the Nagles are released from the obligations of that contract, and Syer cannot now recover against them thereon.

150 Va. at 514.

Questech contends that *Nagle* is not dispositive because it merely constitutes an election of remedies case. Questech Opposition, at 6. That position is not sound. In the passage from *Nagle* quoted above, the Court clearly indicated that Syer's suit was barred not only because it involved an election of remedies, but also because Syer had taken successive inconsistent positions. Having taken the position (with knowledge of all the facts) that the first lease represented the agreement between the parties and, therefore, that the second lease was a nullity, he was precluded from later asserting that the second lease was enforceable. This Court finds that *Nagle* is controlling and that Questech's suit is therefore barred.

As the Court stated in *C. & O. Ry. Co. v. Rison*, 99 Va. 19 (1900):

> A party is forbidden to assume successive positions in the course of a suit or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other and mutually contradictory.

99 Va. at 31. Even though it is arguable that the Partnership did not rely to its detriment upon Questech's contradictory positions, an underlying pol-

icy supportive of the *Leech, Nagle,* and *Rison* decisions is to discourage litigants from the opportunistic adoption of inconsistent stands in the course of a case or related cases. Accordingly, I find that detrimental reliance is not essential for Questech's present cause of action to be barred.

Since Counts I through III of Questech's motion for judgment each depend upon Questech's right to enforce its reasonable request to enter into the Second Sublease, the Partnership's motion for summary judgment as to those counts is granted.

## B. *Count IV*

Paragraph 19 of the Lease provides as follows:

> *19. Subletting and Assignment*
>     Lessee will not transfer nor assign this lease, nor let nor sublet the whole or any part of the Demised Premises, nor permit the demised premises to be used by others. Provided, however, if Lessee is not in default under this Lease, it may assign or sublet all or a portion of the lease upon Lessor's written approval, which approval shall not be unreasonably withheld or delayed. In the event the Lessor's written consent is given to an assignment or subletting, the Lessee shall, nevertheless, remain liable to perform all covenants and conditions hereof and to guarantee such performance by its assignee or subtenant, unless such sublessee or assignee is of equal net worth as Lessee, in which event Lessee shall be released from this Lease agreement.

Based upon Paragraph 19, Questech contends that it is not bound by the Lease with respect to the space sublet by Questech to SAIC because SAIC's net worth was equal or greater than Questech's. The Partnership, however, contends in its cross-motion for summary judgment that the language of Paragraph 19 may not be read to mean what Questech contends it means.

The core of the Partnership's argument is that:

> [a]ccording to Questech, a landlord that consents to a sublease loses the economic benefits of the prime lease with no consideration for so doing. In Questech's view, the Partnership voluntarily took a $9.00 per square foot loss ($83,340 annually) without consideration when it granted Questech consent to the Sublease.

> This makes no sense. What [Paragraph] 19 means is what Questech expressly affirmed in the Sublease and reaffirmed by its conduct over two years, the Lessee (Questech) remains liable under the lease while being permitted to sublease.

Partnership Memorandum in Support of Motion for Summary Judgment, at 7.

The partnership's lack of consideration argument is misguided. The reduced rent to be received by the Partnership did not occur by reason of the Partnership's consent to the sublease but by its apparent agreement to release Questech if Questech subleased — on any terms — to a tenant with prescribed financial qualifications. Whatever the merits of that release provision, it was presumably part of the consideration that Questech bargained for when the original lease was negotiated. Of course, the Partnership might have protected itself by precluding a sublease for less rent than Questech was paying. It failed to do so.

Furthermore, the Partnership's motion for summary judgment is otherwise unmeritorious. It is partially based upon Questech's course of conduct over a span of two years. Questech manifestly does not concur with the Partnership's interpretation of that course of conduct and is entitled to present evidence before the trier of fact as to the reasons for its conduct.

The Partnership's cross-motion for summary judgment as to Count IV is therefore denied.