## CIRCUIT COURT OF FAIRFAX COUNTY

7600 Limited Partnership

   v.

QuesTech, Inc.

### Case No. (Law) 148381

September 26, 1996

BY JUDGE LESLIE M. ALDEN

On September 13, 1996, the parties argued before this Court the Plaintiff's Motion to Compel interrogatories and document production requests. The Court took under advisement Interrogatory No. 1[1] and Document Request No. 17,[2] which pertain to attorney's billing records. Pursuant to the Court's Order, the defendant submitted a memorandum on the effect of the advice of counsel defense on the attorney-client privilege, and the plaintiff filed a reply thereto.

---

[1] Interrogatory No. 1: "State all facts and identify all documents which pertain in any way to the attorney's fees and expenses incurred by QuesTech in the Sublease I Case, the Sublease II Case, and the Square Footage Case."

[2] Document Request No. 17: "All documents reflecting the attorney's fees and expenses incurred by QuesTech in the Sublease I Case, the Sublease II Case, and the Square Footage Case."

I find that the information sought pertaining to time records and fee information is relevant to the advice of counsel defense and that QuesTech waived its attorney-client privilege as to these matters by asserting the defense. The Motion to Compel as to Interrogatory No. 1 and Document Request No. 17 is therefore granted.

### QuesTech's Attorneys' Time Records

7600 Limited Partnership (7600) argues that, since QuesTech is claiming advice of counsel as a defense, QuesTech must demonstrate what action it sought from its lawyers and when it was sought. According to 7600, the attorneys' time/fee records are the best proof of this. On the other hand, QuesTech argues that such information is simply not relevant to its advice of counsel defense. QuesTech also asserts that any waiver of the attorney-client privilege is narrow, only going to the actual advice given and that the information sought is beyond the scope of the waiver.

Rule 4:1 of the Rules of the Supreme Court of Virginia states, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of ... any other party ... .

Thus, if the information sought is relevant and if any privilege protecting it has been waived, it is discoverable. Neither the Virginia Supreme Court nor the Virginia Court of Appeals has addressed the scope of the waiver of the attorney-client privilege when advice of counsel is propounded as a defense to a claim or malicious prosecution. However, the Virginia Supreme Court has discussed the elements which a defendant must show for advice of counsel to be a successful defense against such a claim. "The defendant must prove that he sought advice of counsel with an honest purpose of being informed of the law, that he made a full, correct, and honest disclosure of all material facts known to him or which he should reasonably have known, and that he acted in good faith guided by the advice given by counsel." *Pallas v. Zaharopoulos*, 219 Va. 751, 250 S.E.2d 357 (1979). Thus, it is appropriate to discover information or material relevant to issues raised by this defense.

Here, 7600 seeks information about the quality and quantity of time QuesTech's attorneys spent on researching and advising QuesTech about the aforementioned underlying litigation. This is relevant to QuesTech's assertion of the advice of counsel defense because it goes to whether QuesTech did in

fact seek legal advice with an honest purpose and whether it made a full and honest disclosure of all material facts known. 7600 is entitled to any such information in order to rebut QuesTech's defense. Thus, QuesTech's claim that the information is not relevant fails.

Regarding QuesTech's assertions of privilege, it is well settled that "when a party asserts an advice of counsel defense, it waives the attorney-client privilege with respect to 'all communication to and from counsel concerning the transaction for which counsel's advice was sought'." *Applied Telematics, Inc. v. Sprint Corp.*, 1995 WL 567436 at *1 (E.D. Pa. 1995).

QuesTech does not dispute that assertion of the defense results in a waiver of the attorney-client privilege; rather, QuesTech contends that the scope of the waiver is very narrow. Citing persuasive but not controlling cases, it claims that "[c]ourts have held that a party asserting the advice of counsel defense waives the attorney-client privilege only as to those communications to and from counsel concerning the transaction for which counsel's advice was sought." Def. Supp. Brief at 3. However, as stated above, I find that the information sought does "concern[] the transaction" which was the basis for the advice. Thus, the corporation waived its attorney-client privilege as to time spent by the attorneys preparing advice about whether to sue 7600.

### QuesTech's Attorneys' Fees

7600 also seeks information about the attorneys' fees incurred by QuesTech in the three underlying cases. At the September 13 hearing, I stated my doubts that fee information as a basis for determining reasonable attorneys' fees was probative. Courts are split on whether the amount of time spent and fees incurred by the defendants is relevant or comparable to plaintiffs' claims. *See Naismith v. Professional Golfers Ass'n*, 85 F.R.D. 552, 563-64 (N.D. Ga. 1979) (finding that such information is relevant and discoverable); *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir.), *cert. den.*, 439 U.S. 1039 (1979) (denying discovery of such information).

Commentators state that opposing counsel's fees are a "relevant, but not controlling comparison ... . [T]he better practice would probably allow the court to have the information and give it as much weight as it deems proper...." 2 *Court Awarded Attorney Fees* § 18-105, ¶ 18.06[2]; *see also* Manual for Complex Litigation (3d) 24.231 (asserting that records showing defendants' attorneys' fees may be a guide to determining reasonableness of fees claimed by plaintiffs).

I conclude that information regarding the attorneys' fees and expenses may be discovered as the privilege has been waived. Of course, the admissibility of the information will be determined by the trial judge.

January 24, 1997

By Judge Stanley P. Klein

In their seven count Amended Motion for Judgment, Plaintiffs 7600 Limited Partnership and Guy Beatty seek damages against Questech, Inc., Norman H. Singer, and Keck, Mahin, and Kate (the Keck firm) for abuse of process (Count I), malicious prosecution (Count II), breach of contract (Counts III & IV), intentional interference with relationship (Count V), intentional infliction of emotional distress (Count VI), and generalized tort (Count VII). Singer and the Keck firm have demurred to the malicious prosecution count asserting that the Amended Motion for Judgment does not allege the "special injury" necessary to constitute a cause of action for malicious prosecution arising out of an underlying civil action. Singer and the Keck firm have, in addition, filed a plea in bar to the malicious prosecution and intentional interference counts on the grounds that these claims against them are time-barred. QuesTech also filed a plea in bar to the intentional interference count on the same basis.

The parties have fully briefed the relevant issues. The Court has considered these briefs, the relevant authorities, and the oral argument of counsel. For the reasons set forth in this opinion, the Court overrules Singer's and the Keck firm's demurrer and plea in bar to Count II but sustains the Defendants' pleas in bar to Count V.

## I. *Background*

This lawsuit is a culmination of over six years of litigation between 7600 and QuesTech. 7600 formerly owned an office building (the Building) located in Falls Church, Virginia. It leased four floors of the Building to QuesTech on January 22, 1988, for a period of ten years, for a rental fee of approximately 2.5 million dollars per year. A portion of the leased premises was subleased soon thereafter. As an incentive to QuesTech to enter into this long-term lease, 7600 gave QuesTech a 4.5 million dollar inducement payment. Shortly after QuesTech occupied the premises in September of 1988, difficulties arose between the parties. In 1990, 7600 filed the first of numerous lawsuits between the parties seeking recovery of 750,000 dollars. QuesTech counterclaimed for

1 million dollars. 7600 prevailed at trial and was awarded a judgment against QuesTech for 750,000 dollars. QuesTech appealed the judgment to the Virginia Supreme Court and posted a supersedeas bond. The Virginia Supreme Court denied QuesTech's appeal in November 1992, and 7600 later executed on the appeal bond. During all relevant times, Singer was an officer of QuesTech and a partner in the Keck firm.

7600 alleges that in the fall of 1992, QuesTech, Singer, and the Keck firm "embarked upon a campaign of abusing the court system of the Commonwealth of Virginia to try to get out of its legal obligations under the [l]ease." Amended Motion for Judgment, ¶ 26. On October 2, 1992, QuesTech filed suit against 7600 (the Validity Case) in this court alleging that its lease with 7600 was void. In the Amended Motion for Judgment herein, 7600 alleges that shortly thereafter, QuesTech requested approval of a second sublease between QuesTech and a third party for approximately 17,793 square feet of the leased premises. 7600 declined to approve this second sublease. In response to their refusal to approve the second sublease, 7600 contends that QuesTech filed a second suit in the Fairfax County Circuit Court (Sublease I case). In the Sublease I case, QuesTech alleged tortious interference with QuesTech's relationship with its proposed second sublessee.

In April, 1993, 7600 was granted summary judgment in the Validity Case. QuesTech filed a petition for appeal with the Virginia Supreme Court, which was denied.

7600 further alleges that from October, 1993, to January, 1994, QuesTech withheld its rental payments at a time when QuesTech knew 7600 was involved in negotiations with John Hancock Mutual Life Insurance Company (Hancock), the lender on the Building loan. 7600 was trying to secure an extension or modification of its loan which was due on November 1, 1993. 7600 asserts that as a result of QuesTech's acts, it was forced to default on the loan to Hancock and Hancock thereafter withdrew its original favorable proposal to 7600.

On the day before the scheduled trial in the Sublease I case, QuesTech notified 7600 that it would be taking a nonsuit. Thereafter, in March, 1994, QuesTech refiled the Sublease I case (Sublease II case) repeating the claims of the Sublease I case and adding an additional count claiming that 7600 had released QuesTech from its obligation to pay rent on the area QuesTech had subleased to its sublessee.

On April 21, 1994, QuesTech filed a fourth lawsuit (Square Footage case) against 7600, wherein QuesTech alleged that it had overpaid rent since the inception of the lease because 7600 had calculated the rentable square footage

of the lease inaccurately. The next day, Hancock foreclosed on 7600's interest in the Building and became its owner.

In September, 1994, 7600 was granted summary judgment on Counts I through III of the Sublease II case, leaving Count IV for trial.[3] On May 22, 1995, Judge Quinlan Hancock dismissed the Square Footage case. In June, 1995, Judge Arthur B. Vieregg found for 7600 at the trial of Count IV of the Sublease II case.

7600 alleges that it incurred over $370,000.00 in attorneys' fees in defending the Sublease I, Sublease II, and Square Footage cases. It asserts in its malicious prosecution count (Count II) that QuesTech, Singer, and the Keck firm prosecuted the Sublease I, Sublease II, and Square Footage cases without probable cause and with malicious intent to cause 7600 damage. It further claims that in prosecuting these cases, the defendants caused 7600 "special injury including: (a) loss of the Building, (b) harm to the partnership's relationship with Hancock, and (c) the cost of defending multiple frivolous suits concerning the same lease." Amended Motion for Judgment, ¶¶ 79, 79A. In Count V, 7600 further alleges that these three lawsuits were prosecuted with the intent to interfere with 7600's relationship with Hancock and, in fact, succeeded in that regard.

On December 22, 1995, 7600 filed a Motion for Judgment in this matter against QuesTech. On September 13, 1996, 7600 filed an Amended Motion for Judgment, which named Singer and the Keck firm as additional parties defendant.

## II. *Demurrer to Malicious Prosecution Count*

In order to sustain a cause of action for malicious prosecution stemming from civil rather than criminal proceedings, a plaintiff must allege and prove: (1) the underlying suit was instituted by the defendant and was terminated in a manner not unfavorable to the plaintiff; (2) the underlying action was instituted without probable cause; (3) the underlying suit was instituted with malice; and (4) there was an arrest of the plaintiff, seizure of his property, or other "special injury to plaintiff." *Ayyildiz v. Kidd,* 220 Va. 1080, 1082 (1980). Singer and the Keck firm demur to this count asserting that the Amended Motion for Judgment fails to allege an arrest of the plaintiff, seizure of plaintiff's property, or "special injury," as that term has been interpreted under Virginia law. 7600 concedes that there was no arrest or seizure of its property

---

[3] QuesTech, Inc. v. 7600 Limited Partnership, 34 Va. Cir. 447 (1994). [Reporter's Note]

but contends that it has suffered "special injury" as a result of the prosecution of the Sublease I, Sublease II, and Square Footage cases.

Special injury encompasses "a special loss or unusual hardship resulting from the malicious prosecution of the original action ... and excludes the kind of secondary consequences that are a common and often unavoidable burden on defendants in all similar causes ... . Special injury in this restricted sense focuses upon the intention of the defendant in the prosecution of the original case rather than upon the special circumstances of the plaintiff." *Id.* at 1084 (citations omitted). The expenditure of attorneys' fees and costs to defend against a single lawsuit does not constitute special injury. *Id.* Moreover, the mental anguish, loss of professional reputation, and time away from business caused by the institution of a disciplinary action against an attorney is also not a sufficient injury. *Ely v. Whitlock*, 238 Va. 670, 674 (1990).

7600 alleges that the principal special injury it suffered was the loss of the Building. In the Amended Motion for Judgment, 7600 claims that the Defendants filed numerous frivolous lawsuits in order to induce 7600 to release QuesTech from its obligations under the lease between the parties. These lawsuits were allegedly filed to convince 7600's lender, Hancock, that 7600 was not a viable long-term borrower and that it would be unable to meet its obligations to Hancock. The defendants in fact succeeded in that endeavor and Hancock replaced 7600 as QuesTech's landlord when 7600's interest in the building was lost through foreclosure.

The Virginia Supreme Court has never addressed whether the cost of defending multiple malicious lawsuits can constitute "special injury." However, other courts have found that such costs are not the typical kind of expense "commonly associated with the defense of the original proceeding." *Soffos v. Eaton*, 152 F.2d 682, 683 (D.C. Cir. 1945).

> The burden of being compelled to defend successive unconscionable suits is not one which would "necessarily result in all suits prosecuted to recover for like causes of action." The burden increases in more than arithmetical proportion ... [s]uccessive suits may even wear a defendant down to the point of capitulation.

*Id. See also, Weisman v. Middleton*, 390 A.2d 996, 1002-1003 (D.C. 1978); *Kauffman v. Shefman*, 426 N.W.2d 819, 824 (Mich. Ct. App. 1988).

Here, at a demurrer stage of these proceedings, this Court is unwilling to rule that the loss of a partnership's major asset as a result of the filing and prosecution of multiple frivolous lawsuits aimed at achieving that specific goal cannot, as a matter of law, constitute "special injury" to support a claim for

malicious prosecution. Consequently, the demurrer of Singer and the Keck firm to Count II is overruled.

### III. *Singer's and the Keck Firm's Plea in Bar to Count II*

Singer and the Keck firm have filed a plea in bar claiming *inter alia* that the cause of action against them for malicious prosecution in Count II is time-barred. They assert that the Sublease I, Sublease II, and the Square Footage cases, which comprise the basis for the malicious prosecution count, terminated respectively on January 18, 1994, June 13-14, 1995, and May 22, 1995. The Amended Motion for Judgment, which first named Singer and the Keck firm as parties was filed on September 13, 1996, over one year after the conclusion of each of the predicate cases. A cause of action for malicious prosecution accrues upon the termination of the underlying proceeding pursuant to Va. Code § 8.01-249. As claims for malicious prosecution are governed by Va. Code § 8.01-248's catch-all limitations period of one year for causes of action accruing before July 1, 1995, these Defendants argue that any claims for malicious prosecution against them had to be filed well before the filing of the Amended Motion for Judgment.

Plaintiff responds that neither the Sublease II nor the Square Footage case terminated prior to July 1, 1995, as the final order in the Sublease II case was not entered until July 3, 1995, and the Square Footage case was not terminated until QuesTech withdrew its notice of appeal to the Virginia Supreme Court on August 7, 1995. As such, these causes of action accrued after July 1, 1995, and are therefore subject to the two-year statute of limitations prescribed by the 1995 amendments to Va. Code § 8.01-248, which took effect July 1, 1995. The Court agrees with 7600.

In Virginia, a court of record speaks through its written orders. *Davis v. Mullins*, 251 Va. 141, 148 (1996); *Cunningham v. Smith*, 205 Va. 205, 208 (1964). Therefore, the Sublease II case did not terminate until July 3, 1995, when the final order dismissing it was entered by the court.

The timing of the accrual of a cause of action for malicious prosecution when an appeal of the underlying case's dismissal has been noted to an appellate court appears to be an issue of first impression in the Commonwealth. However, the Supreme Court's decision in *Faison v. Hudson*, 243 Va. 413 (1992), provides some guidance. In *Faison*, the Court addressed whether the bars of *res judicata* or collateral estoppel could be raised when a final judgment of a trial court was appealed to an appellate court. The Court weighed the possible mischief of an unsuccessful litigant's pursuing appeals simply to avoid the effects of the underlying judgment against the possibility

68

that an underlying judgment, which is eventually reversed on appeal, could nonetheless serve as the sole basis for the entry of another judgment while the appeal was pending. Noting that the authorities were divided on the issue, the Court determined that it would be "manifestly unfair ... to hold that a judgment which no longer is final could operate as a bar to the prosecution of the present case." *Id.* at 419.

The same rationale supports 7600's position herein. If this Court were to accept Defendants' position, parties could file and prosecute malicious prosecution actions to judgment, while the appeal of the dismissal of the underlying criminal or civil case could be pending in Virginia's appellate courts. Upon a reversal of the dismissal of the predicate case, inconsistent verdicts could exist. Moreover, unnecessary costs to the parties and an already overburdened judicial system can be avoided by requiring a final determination of the underlying action before the commencement of the malicious prosecution suit. This Court therefore holds that the judgment in the original action is not final for purposes of a subsequent malicious prosecution suit until all appeals have expired. As QuesTech did not withdraw its appeal in the Square Footage case until August 7, 1995, the two-year statute of limitations then prescribed by Va. Code § 8.01-248 applies. Accordingly, the plea in bar of Singer and the Keck firm to Count II is overruled.

## IV. *Defendants' Plea in Bar to Count V*

Defendants QuesTech, Singer, and the Keck firm contend in their pleas in bar to Count V that Plaintiffs' claim for intentional interference with its relationship with its lender, Hancock, is time-barred by Virginia Code § 8.01-248. According to Defendants, Plaintiffs' claim accrued no later than April 22, 1994, when the Building was foreclosed on by Hancock. Plaintiffs did not file suit until September 13, 1996, well after the then existing one-year limitations period prescribed by Va. Code § 8.01-248 had expired.[4]

Plaintiffs contend that the five-year "injury to property" limitations period of Code § 8.01-243(B) governs, as their property was "injured" by the foreclosure. They rely upon two Virginia Circuit Court decisions, a bankruptcy

---

[4] Virginia Code § 8.01-248 was amended effective July 1, 1995, to increase this statute of limitations period to two years. As the parties agree that the cause of action accrued no later than April 22, 1994, that amendment is not relevant to this case. *See Starnes v. Cayouette,* 244 Va. 202 (1992); *Shilflett v. Eller,* 228 Va. 115, 120 (1984). Moreover, over two years elapsed between the April 22, 1994, foreclosure and the September 13, 1996, filing of the Amended Motion for Judgment. Therefore, a two-year limitations period would not alter the Court's analysis.

court decision, and the Virginia Supreme Court's decision in *Worrie v. Boze*, 198 Va. 533 (1956). Neither the decisions of my circuit court colleagues nor the decision of the United States Bankruptcy Court judge are binding on this Court. Moreover, contrary to 7600's position, the decision in *Worrie* is not controlling for a number of reasons. First, *Worrie* was decided under former Va. Code § 8-24, which has been repealed. Second, the decision in *Worrie* rests in large part on the Court's determination that the right to performance of a *contract* is a property right as distinguished from 7600's claim for interference with its *relationship* with Hancock. *Id.* at 536. Finally, the rationale underlying the Court's decision in *Worrie* must be read in conjunction with the Supreme Court's subsequent decisions on this issue when applying it to the facts of this case. In *Worrie*, the Supreme Court noted that the defendants' solicitation of plaintiffs' customers was the tortious conduct. "Clearly under these allegations, the wrong done and damage done *are directed to the estate or property of the plaintiffs and not to them personally*." *Id.* at 537 (citations omitted) (emphasis supplied).

Defendants rely principally upon the Virginia Supreme Court's decisions in *Pigott v. Moran*, 231 Va. 76 (1986), and *J. F. Toner and Son v. Stanton Prod. Credit*, 237 Va. 155 (1989), to support their contention that the period of limitation set out in Va. Code § 8.01-248 controls. The decisions in *Pigott* and *J. F. Toner and Son* must also be analyzed in conjunction with not only the decision in *Worrie* but also more recent decisions from the Virginia Supreme Court.

In *Pigott*, plaintiffs purchased certain residential property based upon the defendants' representations that the adjoining property was zoned residential. 231 Va. 76 (1986). In fact, it was zoned for an industrial park, and when construction in the park commenced, plaintiffs filed suit alleging fraud. As more than one year had elapsed since the fraud occurred, defendants filed a plea in bar asserting that the period of limitation was governed by Virginia Code § 8.01-248. Plaintiffs asserted that theirs was an "action for injury to property," pursuant to Va. Code § 8.01-243(B), and therefore, the five-year statute of limitations prescribed by that statute governed. The trial court sustained the plea in bar, and the Virginia Supreme Court affirmed. The Court reasoned that:

[t]he fraud allegedly committed by the realtor had no impact on the real property itself. The purchasers' land was in the same condition and was available for the same use after the alleged fraud as it was before. The defendants' conduct was *directed at the plaintiffs personally* and not their property, real or personal. Consequently, the

trial court correctly decided the one-year limitation governs *an action for fraud*.

*Id*. at 81 (emphasis added).

In *J. F. Toner and Son*, plaintiffs obtained a loan through defendants and subsequently sought to borrow more funds. 273 Va. 155 (1989). Defendants agreed to loan additional funds if plaintiffs executed another security agreement covering more of their assets. Plaintiffs tendered the security, but defendant never provided the additional loans, and plaintiff's assets were foreclosed upon. Relying on *Pigott*, the defendants argued that the one-year limitation period of Virginia Code § 8.01-248 controlled. Plaintiffs contended that *Pigott* was inapposite because, contrary to the situation in *Pigott*, plaintiffs actually lost all of their use, enjoyment, and value in their property because of defendants' fraud. The trial court sustained defendants' pleas in bar, and again, the Supreme Court affirmed.

> We think this purported distinction to be more apparent than real. The defendants' alleged fraud had no effect upon the plaintiffs' property. The property had the same form, the same value, and was adapted to the same uses after the defendants' actions as before. The defendants are simply alleged to have persuaded the plaintiffs to part with it. Thus, *the allegedly wrongful acts were aimed at the persons of the plaintiffs*. Rather than injuring their property, the alleged wrongs caused them to sustain "financial damage personal to the individual," as did the misrepresentations alleged in *Pigott*.
>
> *Because fraud invariably acts upon the person of the victim rather than upon property*, its consequence is personal damages rather than injury to property.

*Id*. at 158 (emphasis supplied).

The Virginia Supreme Court next addressed this issue in *Vines v. Branch*, 244 Va. 185 (1992). In *Vines*, the plaintiff alleged that she had purchased an automobile and had requested that defendant deliver the cashier's check to the seller. Unbeknownst to plaintiff, defendant titled the car in her own name and then retained possession of it. When defendant ceased providing transportation to plaintiff, plaintiff unsuccessfully demanded return of her vehicle. In the two count motion for judgment, she filed over one year later, plaintiff asserted causes of action for breach of contract and trespass. In response to a motion to dismiss the trespass count on statute of limitations grounds, she asserted that defendant's actions constituted a continuing trespass to her personal property,

and therefore, the five-year limitation of Code § 8.01-243 would control. The trial court held that the one-year limitation period of § 8.01-248 governed, but here, the Supreme Court reversed.

> One who commits a trespass to a chattel is liable to its rightful possessor for actual damages suffered by reason of loss of its use. *Zaslow v. Kroenett*, 29 Cal. 2d 541, 551-52, 176 P.2d 1, 7 (1946). Since *Branch's alleged conduct was directed at Vines' property and not at Vines personally, it constitutes an injury to property. See Pigott v. Moran*, 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986). Accordingly, the five-year limitation period of Code § 8.01-243(B) governs. *Id.*

*Id.* at 190 (emphasis supplied).

The Virginia Supreme Court's latest analysis on this issue is set out in its opinion in *Bader v. Central Fidelity Bank*, 245 Va. 286 (1995). In *Bader*, the plaintiff's husband forged three of her checks from a stock brokerage account. Approximately three years later, she filed suit against the broker and the bank. The bank moved for summary judgment arguing, alternatively, that the claim arose out of Mr. Bader's fraudulent conduct and hence was barred by the two-year limitation period contained in Code § 8.01-243(A); or, that plaintiff's claim was a personal action, for which no other limitation period was specified, and therefore, was governed by Code § 8.01-248. The trial court held that Bader's claim necessarily arose out of a fraud and therefore was time-barred. Distinguishing its decision in *Pigott* and noting its decision in *J. F. Toner and Sons*, the Virginia Supreme Court reversed and stated:

> Unlike the purchasers in *Pigott*, the gist of the cause of action asserted by Mrs. Bader is that Central Fidelity wrongfully exercised authority over her funds and, thus, she was deprived of possession and use of those monies. *See Vines v. Branch*, 244 Va. 185, 190, 418 S.E.2d 890, 894 (1992) (conduct directed at property constitutes an injury to property). Central Fidelity's *alleged act of conversion was not aimed at Mrs. Bader's person, but was directed upon her property.*

*Id.* at 190 (emphasis supplied).

The determinative factor in each of the Supreme Court's decisions in *Worrie, Pigott, J. F. Toner and Sons, Vines,* and *Bader* was at whom the tortious conduct was directed. In *Pigott* and *J. F. Toner and Son*, when the cause of action was fraud, the conduct was necessarily directed at the party defrauded. However, in *Worrie, Vines,* and *Bader*, when the causes of action

were for interference with a contract, trespass, and conversion, the tortious acts were directed at the property.

Here, Plaintiffs allege that the tortious acts supporting this cause of action were the filing and prosecution of meritless lawsuits. These suits were filed solely against 7600. Hancock was not a party to any of these actions. It cannot be seriously questioned that all conduct supporting this claim was therefore directed solely against 7600. Virginia Code § 8.01-248 therefore applies to the facts in this case. Accordingly, Defendants' pleas in bar to Count V of the Amended Motion for Judgment are sustained, and Count V is dismissed with prejudice.